Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Plaintiff, *v.* United States Steel Corporation, American Bridge Division, Shiffler Works, Defendant.

Argued September 6, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Rajeshwar Kumar*, for plaintiff.

*S. G. Clark, Jr.*, with him *James T. Carney*, for defendant.

*J. Thomas Menaker*, with him *James H. Stewart, Jr.*, and *Nauman, Smith, Shissler & Hall*, for amicus curiae.

OPINION BY PRESIDENT JUDGE BOWMAN, November 1, 1973:

Before us are preliminary objections of United States Steel (USS) to a complaint in equity by the Pennsylvania Human Relations Commission seeking enforcement of an order it had previously issued to USS to answer extensive interrogatories.

To delineate the issues raised by the preliminary objections in the nature of a demurrer contesting both the jurisdiction of this Court to entertain the complaint and the jurisdiction of a court of equity, a recitation of the background leading to the filing of this complaint in equity is necessary. Although not averred in the Commission's complaint, it is undisputed and we take judicial notice of public records which are the genesis of subsequent Commission action leading to the present controversy.

In 1971, the Federal Equal Employment Opportunity Commission (EEOC) compiled a list of some 85 Pennsylvania employers which, based upon percentages of women and minority groups employed by a particular employer measured by comparable percentages in area census figures, it found to be appropriate subjects for affirmative action programs. Based upon this report EEOC submitted to our Pennsylvania Commission an EEOC Project Report—Analysis of Targets.[1] USS is

---

[1] "Last month [EEOC] project staff presented the list of initially selected targets for 65 companies. Since that time eight other companies and 12 hospitals have been added for a total of 85 targets. The remaining 15 open targets are being reserved for referral unions and will be chosen within the next month.

*"Analysis of Targets*

"It is unlikely that all 100 targets for Commission initiated pattern and practice cases will be started at the same time. Therefore two basic criteria for the ranking of companies has been developed. The first criterion is based on an analysis of the pay-off in terms of number of jobs that can possible [sic] be acquired for minorities and women in any given company or organization. This analysis does not take into consideration Commission experience with any company or its judgment of the general effects of a company's policies on a community.

"The second criterion for selection, the Commission's experience and judgment, will have to be superimposed by Commission staff on the strictly statistical comparisons contained in this report.

one of the employers listed and "targeted" for suggested action by our Pennsylvania Commission.

Acting on its own initiative, on August 21, 1972, the Commission filed with itself a formal complaint against USS alleging it to have violated Section 5 of the Pennsylvania Human Relations Act of October 27, 1955, P. L. 744, *as amended*, 43 P.S. §955, in that USS ". . . has in the past and continues until the present time to maintain a discriminatory system of recruitment, hiring, training, employment, compensation, promotion, demotion, job assignment or placement, transfer, lay off, retention, referral, dismissal, rehire, retirement, and pensions, and has otherwise discriminated in the past and continues until the present time to discriminate regarding terms, conditions and privileges of employment because of sex, race and national origin."

Attached to this complaint was an interrogatory consisting of sixty-one questions which were to be answered within twenty-one days. USS refused to answer them. Hence this suit in which the Commission, asserting a want of an adequate remedy at law, seeks judicial enforcement of its order directing USS to answer the interrogatories.

Two issues are raised by the preliminary objections. In considering them we must be mindful that the Commission, of the several alternatives available to it to perform its duties and effectuate the purpose of the

---

"*Method of Ranking Targets*

"The following steps were used to reach a numerical ranking for all targets:

"1. All targets were initially ranked by total number of employees and percent of minority and female employees.

"2. The percentage difference between the minorities in the company and the minorities in the area was multiplied by the total number of jobs in the company. The product of these two numbers gives the number of jobs that would be available to minorities if they reflected their proportion in the community."

Act, chose to proceed in this case through self-initiated formal complaint procedures pursuant to Section 9 of the Act, 43 P.S. §959, which, among other procedures, provides that the ". . . Commission . . . upon its own initiative . . . may . . . make, sign and file such complaint."

It is equally important to keep in mind that the Commission, in its complaint in equity in this Court, asserts that a court of equity has jurisdiction to enforce a Commission order notwithstanding Section 10 of the Act, 43 P.S. §960, which confers upon this Court statutory jurisdiction to enforce lawful orders of the Commission through enforcement proceedings initiated by the Commission.

Having chosen to proceed against USS for alleged discriminatory practices in employment by self-initiated formal complaint procedures, must the Commission complaint set forth the particulars of the alleged discrimination and, if so, does the complaint of the Commission meet that test?

Section 9 of the Act, under which the Commission elected to proceed in thise case, requires complaints to be in writing, contain the name and address of the person alleged to have committed a discriminatory practice and to "set forth the particulars" of the alleged discriminatory practice.

It is defendant's contention that the Commission's self-initiated formal complaint is subject to this requirement of particularity, that it fails to meet this test and thus does not state a cause of action upon which subsequent discovery procedure may rest; in this case a demand to respond to the disputed interrogatories. To hold otherwise, defendant contends would permit the Commission by a fishing expedition to bootstrap this fundamental inadequacy of its complaint.

The Commission does not contend, and we perceive no basis for a contention, that its self-initiated complaint

is not subject to the particularity of pleading requirement of Section 5. It does contend, however, that the averments of the complaint meet this test or, alternatively, that as a tool of its investigatory power it may order the interrogatories in question to be answered.

The crucial paragraph of the Commission complaint against USS is recited above.

It is self-evident that this averment is but a slightly expanded restatement of Section 5(a) of the Act and as such is a mere conclusion of law. It is totally deficient in particularity by any standard, and advises USS in no way by what means, methods or circumstances it is charged with discrimination.

In *Pittsburgh Press Employment Advertising Discrimination Appeal,* 4 Pa. Commonwealth Ct. 448, 287 A. 2d 161 (1972), *aff'd,* U.S. (1973), we recognized that constitutional due process considerations do not require administrative proceedings and practices to conform to the niceties of judicial proceedings and applied the rule in that case. We further observed, however, that the parties are entitled to know the issue in any particular proceedings so that they may be prepared to meet it by proper evidence. *Pittsburgh Press* involved a local ordinance which was silent as to the particularity required of formal complaints, and the complaint in that case was initiated by third persons, not by that particular commission itself. That complaint also clearly pinpointed the particular action or activity alleged to be discriminatory, namely the employment advertisements of the newspaper carried under male or female columns. Equally inapposite as *Pittsburgh Press* to support the Commission's position are the many Federal court and administrative rulings cited by it as they are concerned with different statutory provisions or involve investigatory procedures. We would add that the Pennsylvania Human Relations Commission, well-staffed with avowed experts and at-

torneys experienced in this field, should not and cannot, of all complainants, be permitted to not only ignore the statutory mandate of particularity but to do so on the theory of a want of expertise out of which the general rule has evolved.

In our opinion, the self-initiated complaint by the Commission does not comport to the requirements of Section 5 of the Act requiring complaints to contain some particularity of fact to support an alleged violation of the Act. Discovery procedure initiated pursuant thereto must likewise fall when predicated upon an insufficient complaint.

In Sections 7 and 9 of the Act are found broad powers conferred upon the Commission in the enforcement of its provisions and procedures are prescribed which are to be employed in exercise of the powers granted.

The Commission's alternative argument as to the issue under discussion seems to be that it is simply conducting an investigation incident to which it has issued the disputed interrogatories and that the use of such interrogatories is authorized by statute for investigatory purposes. In neither section is the Commission given the specific power to issue and require answer to interrogatories nor is use of interrogatories mentioned as a procedural device. In essence, the Commission would have us ignore the fundamental distinction between conferred powers and procedural devices afforded to implement the powers granted. There is no question that the Commission has the power to initiate an investigation whenever it has "reason to believe" an unlawful discriminatory act has been committed (Section 7). Whether it has been afforded the power to issue and demand answer to interrogatories incident to an investigation or whether it is afforded their use as a procedural device incident to such an investigation initiated with "reason to believe" we need not decide as such is not the case here. The Commission, by formal

complaint, charges USS with discrimination. It cannot avoid the statutory requirement of particularity simply by now asserting its action to be an investigation. Nor can its power to "initiate, receive, investigate and pass upon complaints . . ." (Section 7) operate to negate the particularity of pleading requirement of Section 9. "Investigate" as used in the above context of Section 7 is essentially a duty imposed upon not a power granted to the Commission with respect to complaints received from third persons. Section 9 prescribing the procedures to be followed by the Commission upon receipt of such a third party complaint makes this manifest. Before formal hearing upon such a third party complaint may proceed the Commission must first determine if probable cause exists and, if so, undertake conciliation and persuasion procedure before proceeding to formal hearing upon the complaint.

Even if one assumes that a consideration of all the powers conferred upon and procedural tools afforded to the Commission in Sections 7 and 9 of the Act includes investigatory power and use of interrogatories as a tool thereof after a formal complaint is filed with or by the Commission, such a contention is not available to the Commission here for want of its complaint meeting the test of particularity. To hold otherwise would strip this statutory requirement of any real meaning.

Finally, in our opinion, a court of equity within its traditional common law jurisdiction does not have jurisdiction over the subject matter of the Commission's complaint in equity before us. Here the Commission seeks enforcement of its "order" requiring the disputed interrogatories to be answered. The Commission asserts that this Court has jurisdiction over the cause of action by reason of the provisions of Section 401(a)(2) of the Appellate Court Jurisdiction Act of July 31, 1970, P. L. 673, 17 P.S. §211.401, by which section we

are given concurrent original jurisdiction over all civil actions and proceedings brought by the Commonwealth.

We have repeatedly held, however, that this provision, in itself, does not afford a broader jurisdiction as to subject matter of a court of equity than existed prior to its enactment.

If this Court has jurisdiction in equity over the cause of action asserted here, it must be found within traditional concepts of equity jurisdiction. The Commission has advanced no reason or authority in support of this test and we know of none particularly in light of the statutorily conferred jurisdiction of this Court to enforce lawful orders of the Commission pursuant to Section 10 of the Act, *supra*. Absent a showing of the inadequacy of this statutory remedy, equity cannot be said to have jurisdiction. *See Beth Jacob Schools of Philadelphia v. Labor Relations Board,* 8 Pa. Commonwealth Ct. 343, 301 A. 2d 715 (1973) ; *Department of Environmental Resources v. Leechburg Mining Company,* 9 Pa. Commonwealth Ct. 297, 305 A. 2d 764 (1973) ; *Commonwealth v. City of Jeannette,* 9 Pa. Commonwealth Ct. 306, 305 A. 2d 774 (1973).

For the foregoing reasons, we enter the following

ORDER

Now, November 1, 1973, the preliminary objections of USS are sustained and the complaint of the Pennsylvania Human Relations Commission is hereby dismissed.