# Pennsylvania Human Relations Commission, Petitioner *v.* St. Joe Minerals Corporation Zinc Smelting Division, Respondent.

456

Argued December 1, 1975, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Frank Finch, III,* Assistant General Counsel, with him *Sanford Kahn,* General Counsel, for petitioner.

*Robert W. Hartland,* with him *Reed, Smith, Shaw & McClay,* for respondent.

Opinion by Judge Blatt, May 13, 1976:

The Pennsylvania Human Relations Commission (Commission) has, in this action, petitioned the Court to enforce an order of the Commission which directs the St. Joe Minerals Corporation, Zinc Smelting Division (St. Joe), the respondent, to answer written interrogatories issued during the course of an investigation of the Company. Before reaching the merits of the petition, however, it is necessary to set forth briefly the factual background.

On August 21, 1972, the Commission, acting on its own initiative, served St. Joe with a formal complaint charging the company with discriminatory practices in violation of Section 5 of the Pennsylvania Human Rela-

tions Act[1] (Act), 43 P. S. §955. This was one of many nearly identical complaints filed against various employers which were selected as "targets" for investigation on the basis of statistics compiled by the Federal Equal Employment Opportunity Commission (EEOC). In *Pennsylvania Human Relations Commission v. United States Steel Corporation,* Pa. , 325 A.2d 910 (1974), a divided Supreme Court affirmed the decision of this Court[2] in which we held that one of these complaints failed to set forth the particulars of the alleged discriminatory practices as required by Section 9 of the Act, 43 P. S. §959. In an attempt to meet this statutory requirement here, the Commission twice amended its original complaint against St. Joe to include employment statistics of St. Joe which were obtained from the EEOC. Subsequent to the filing of the Second Amended Complaint the Commission also requested St. Joe to answer a set of written interrogatories[3] in an attempt to discover detailed information bearing upon the alleged discriminatory practices. St. Joe refused to comply with this request and on June 30, 1975 the Commission formally ordered St. Joe to submit complete answers within fifteen days. Again St. Joe refused and the Commission has now petitioned this Court to enforce its order of June 30.

The respondent contends that the Court lacks statutory authority to entertain the Commission's petition and that in any event the interlocutory nature of the Commission's order precludes enforcement at this time.

---

1. Act of October 27, 1955, P. L. 744, *as amended.*

2. *See Pennsylvania Human Relations Commission v. United States Steel Corporation,* 10 Pa. Commonwealth Ct. 408, 311 A.2d 170 (1973) in which we further described the background to the "target" company investigations.

3. Interrogatories had also been issued with the original complaint and these were simply an amended version of the same.

458

It is clear, of course, that Section 401 of the Appellate Court Jurisdiction Act of 1970,[4] 17 P. S. §211.401, vests this Court with original jurisdiction to entertain proceedings initiated by the Commonwealth. *See Pennsylvania Crime Commission Petitions,* 446 Pa. 152, 285 A.2d 494 (1971), and, therefore, as a threshold matter we must consider the investigatory powers of the Commission which the Commission alleges will support the instant proceeding.

It must be remembered "that the power of an administrative agency must be sculptured precisely so that its operational figure strictly resembles its legislative model." *Community College of Delaware County v. Fox,* 20 Pa. Commonwealth Ct. 335, 351, 342 A.2d 468, 478 (1975); *Zamantakis v. Pennsylvania Human Relations Commission,* 10 Pa. Commonwealth Ct. 107, 308 A.2d 612 (1973). Here, Section 9 of the Act, 43 P. S. §959, provides, *inter alia,* that the Commission, upon its own initiative, may file a complaint "which shall state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unlawful discriminatory practice complained of, and *which shall set forth the particulars thereof. . . ."* (Emphasis added.) The complaint held to be insufficient by this standard in *United States Steel, supra,* amounted to no more than an expanded restatement of Section 5(a) of the Act, 43 P. S. §955(a).[5] The Second Amended Complaint now before us

---

4. Act of July 31, 1970, P. L. 673, *as amended.*

5. The pertinent allegation of the complaint there involved reads:

"4. The Respondent has in the past and continues until the present time to maintain a discriminatory system of recruitment, hiring, training, employment, compensation, promotion, demotion, job assignment or placement, transfer, layoff, retention, referral, dismissal, rehire, retirement, and pensions, and has otherwise discriminated in the past and continues until the present time to discriminate regarding terms, conditions and

charged that St. Joe discriminates "in its hiring of Blacks and females and fails or refuses to utilize recruitment sources which will, or may reasonably be expected to, provide it with Black and female applicants." By itself, of course, this allegation represents a mere conclusion of law, but it is considerably more specific than the broad recitation of unlawful practices alleged in the original complaint held to be insufficient in *United States Steel.* More importantly, the Commission has set forth in the Second Amended Complaint qualitative and quantitative information concerning the employment of minority groups and women by St. Joe all of which demonstrate employment imbalances. The Commission has indicated by numerical and percentage data that the total number of minority individuals employed by the company suggests possible discriminatory hiring, placement, and promotion practices. This statistical data was sufficient, in our view, to have given the commission "reason to believe"[6] that St. Joe had been engaging in unlawful discriminatory practices and to have met the particularity requirements of the Act.

We must turn, therefore, to the question of whether or not the Commission has power to issue written interrogatories in the course of its investigation of the charges alleged in the Second Amended Complaint. It is clear under Section 7(g) of the Act, 43 P. S. §957(g), that the Commission has the power to hold hearings, to subpoena witnesses and to compel the production of documents, *Pennsylvania Human Relations Commission v. Hansson,* 17 Pa. Commonwealth Ct. 161, 331 A.2d 255 (1975), but nowhere in the Act do we find provisions expressly au-

privileges of employment because of sex, race and national origin. This pattern and practice of discrimination is in violation of the applicable provision of Section 5 of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §951 et seq."

6. As is required prior to the self-initiation of a complaint by the Commission under Section 101.01 of its own regulations.

thorizing the Commission to engage in discovery by written interrogatories. We would agree with the Commission that if it has the power to investigate, as it does, it would be a "gross distortion to suggest that the legislative mandate to investigate ... does not include authority (and perhaps the obligation) to ask questions of the party charged with or otherwise suspected of a violation of the Act." In fact we suspect that telephone communications and written correspondence between the Commission and such a party are routinely and informally used for this purpose. But the Act certainly does not empower the Commission to issue and order and petition a court to compel a party under investigation to answer the telephone or respond to correspondence. By the same token, we believe that the Commission may for its convenience request such a party to answer written interrogatories, but the Act simply does not authorize the Commission to seek judicial enforcement of an order to compel answers. Where a party under investigation proves to be uncooperative, it is clear that the Commission may subpoena witnesses and compel the production of documents to carry out its legislative mandate. *Pennsylvania Human Relations Commission v. Hansson, supra.* And in the case of contumacy it may petition the Court for enforcement, but an enforcement proceeding such as the one here concerned is not within the legislative authority of the Commission.

In accordance with these views, therefore, we issue the following

### ORDER

AND, Now, this 13th day of May, 1976, the petition for enforcement of the Order of the Pennsylvania Human Relations Commission dated June 30, 1975 is hereby dismissed.

Judge KRAMER did not participate in the decision in this case.