382 A.2d 731

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Appellant,**

v.

**ST. JOE MINERALS CORPORATION, ZINC SMELTING DIVISION, Appellee.**

Supreme Court of Pennsylvania.

Argued Nov. 15, 1976.

Decided Jan. 26, 1978.

Frank Finch, III, Pa. Human Relations Commission, Philadelphia, Sanford Kahn, Pa. Human Relations Comm., Harrisburg, for appellant.

Robert W. Hartland, Reed, Smith, Shaw & McClay, Pittsburgh, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

This litigation had its genesis in the Pennsylvania Human Relations Commission's investigation, in conjunction with the Equal Employment Opportunity Commission (EEOC), into the employment practices of various companies throughout this Commonwealth.

Designated the "Target Company Project," the project involved a statistical review by the Commission of every major employer in the state, with a view towards initiating formal proceedings against any employer thought to be engaging in discriminatory practices.

Respondent St. Joe Mineral Corporation (St. Joe), one of the employers under scrutiny, received a questionnaire from the Commission's Executive Secretary on May 26, 1971, seeking information concerning the makeup of its work force. Respondent compiled the requested data and forwarded the information to the Commission.

On August 21, the Commission, appellant in this case, served respondent with a complaint charging it with discriminatory employment practices in violation of the Pennsylvania Human Relations Act (PHRA), 43 P.S. §§ 951–963 (1964 & Supp.1977–78). Accompanying the complaint was a set of written interrogatories, seeking detailed information which bore on the alleged discriminatory practices. Respondent refused to answer the interrogatories despite the Commission's admonition that unless the interrogatories were answered within 21 days, the Commission would "draw such adverse inferences as may be appropriate from the failure to complete the questions."

Before further action was taken by the Commission, the Commonwealth Court, in a case involving the same "target project," unanimously held that a complaint nearly identical to the one served on respondent failed to set forth the particulars of the alleged discriminatory practices as required by § 9 of the PHRA, 43 P.S. § 959 (1964). *Pennsylvania Human Rel. Comm'n v. United States Steel Corp.,* 10 Pa.Cmwlth. 408, 311 A.2d 170 (1973). The Commonwealth Court purportedly did not decide whether the Commission could obtain judicial enforcement of an order directing answers to interrogatories.

This Court affirmed the Commonwealth Court. *Pennsylvania Human Rel. Comm'n v. United States Steel Corp.,* 458 Pa. 559, 325 A.2d 910 (1974). We agreed that the Commission's complaint was deficient in that it did not "set forth the particulars" of the alleged discriminatory practice as required by § 9 of the PHRA. Absent a proper complaint, we held that the Commission's enumerated powers delineated in § 7(g) of the PHRA were not available to the Commission; that being so, we had "serious doubts" regarding the Commission's power to compel answers to interrogatories under the same procedural infirmity. 458 Pa. at 565–66, 325 A.2d at 913–14. We expressed no opinion in *United States Steel* concerning the Commission's interrogatory power in a proceeding initiated by a complaint meeting the requirements of § 9.

Faced with our decision in *United States Steel,* the Commission renewed its attempted investigation of respondent, twice amending its complaint to include employment statistics obtained from the EEOC which purportedly demonstrated discriminatory hiring, placement, and promotional practices by respondent. In an attempt to discover detailed information bearing on these employment practices, the Commission again sent interrogatories to respondent, requesting that they be answered. Respondent refused, whereupon the Commission formally ordered compliance within fifteen days. When respondent again refused to answer the interrogatories, the Commission petitioned the

Commonwealth Court to enforce its order that they be promptly answered.

The Commonwealth Court dismissed the petition. *Pennsylvania Human Relations Commission v. St. Joe Minerals Corp., Zinc Smelting Division,* 24 Pa.Cmwlth. 455, 357 A.2d 233 (1976). The Commonwealth Court held that the Commission's twice-amended complaint met the particularity requirement of § 9 of the PHRA, but refused to enforce the Commission's order that respondent answer the interrogatories. Although it was the Commission's prerogative to issue and *request* answers to interrogatories, in its view it could not judicially enforce an order to answer interrogatories since the PHRA did not authorize use of interrogatories as a means of discovery.

This direct appeal presents two issues for resolution: (1) whether the Commission's complaint satisfies § 9 of the PHRA, and (2) whether the Commission can obtain judicial enforcement of its order that respondent answer written interrogatories. We think the Commonwealth Court correctly decided both these issues, and for the following reasons, we affirm its order.

### I. THE SUFFICIENCY OF THE COMPLAINT

Section 9 of the PHRA, as amended, 43 P.S. § 959 (Supp.1977–78), provides that the Commission may, on its own initiative, file a complaint against one allegedly engaging in discriminatory practices. A complaint lodged by the Commission, no less than a complaint filed by any other moving party, must "set forth the particulars" of the alleged discriminatory practice. The Commission's complaint, after identifying the parties involved, asserts that respondent "discriminates in its hiring of Blacks and females and fails or refuses to utilize recruitment sources which will, or may reasonably be expected to, provide it with Black and female applicants." This assertion is followed by statistics such as the percentage of Blacks in respondent's work force in comparison to the percentage of Blacks in the surrounding county, the number of minorities employed in managerial

positions, and the percentage of females at respondent's place of business in comparison to the percentage of females in the area. Based on these statistics obtained from the EEOC, the complaint concludes by charging that "Respondent maintains a pattern and practice of discriminating on the basis of race, sex, and national origin in its hiring, classification, and promotion policies, and its employment practices in connection therewith."

The statistics demonstrate substantial employment imbalances at respondent's place of business. The complaint demonstrates the fact that respondent hires fewer women than men, has a disproportionate number of Caucasian employes in managerial positions, employs a smaller percentage of Blacks than the percentage residing in the surrounding county. The complaint does more than give respondent *notice* that a complaint has been filed against it; it informs it of the *facts* giving rise to the Commission's reason to believe that respondent is engaging in unlawful employment practices. Hence, the complaint comports with Pennsylvania Rule of Civil Procedure 1019, which this Court has suggested guides us in assaying the sufficiency of a complaint under § 9 of the PHRA. *Pennsylvania Human Relations Comm'n v. United States Steel, supra,* 458 Pa. at 565, 325 A.2d at 913.

Appellee argues that the complaint is not "free of substantial defect" nor "legally adequate" because the Commission could have interviewed respondent's representatives and employes in order to determine the reasons for the imbalance. We do not agree. The filing of the complaint in no way militates against voluntary compliance by St. Joe; a respondent is still at liberty to explain away racial or sex imbalances. The purpose of the complaint under § 9 is to apprise the Commission of the employment practices which may prove to be unlawful, and the Commission's figures sufficed to warrant further investigation.

Appellee also argues that because the complaint, filed in January, 1975, is based on employment statistics compiled

for the year 1972, it fails to comport with § 9. Again we do not agree. Many employment relationships are not short term. The racial or sexual composition of an employer's work force generally does not undergo a drastic change from year to year. Indeed, respondent does not allege that were more recent statistics compiled, they would reflect different ratios than those documented in the 1972 figures. We think the Commission could reasonably conclude that substantial racial imbalances existing at respondent's plant in 1972 would still exist two or three years later.

■ ▪ The Commonwealth Court correctly concluded that the complaint is sufficient to meet the requirements of § 9 of the Human Relations Act.

## II. THE COMMISSION'S POWER TO COMPEL ANSWERS TO INTERROGATORIES

The Human Relations Commission's investigatory powers are enumerated in § 7(g) of the PHRA, 43 P.S. § 957(g) (1964). That section empowers the Commission:

"To hold hearings, subpoena witnesses, compel their attendance, administer oaths, take testimony of any person under oath or affirmation and, in connection therewith, to require the production for examination of any books and papers relating to any matter under investigation . . . ."

It is undisputed that § 7(g) does not expressly give the Commission the power to engage in discovery by written interrogatories. Section 6 of the PHRA, *id.* § 956, also gives the Commission all powers conferred on administrative agencies generally by the Administrative Code of 1929, 71 P.S. § 51–732 (1962 & Supp.1977–78). Although the Code gives agencies the power to subpoena witnesses as well as documentary evidence, *id.* § 200, it too is silent on an agency's power to issue and compel answers to interrogatories.

The Commission argues that we would distort the intent of the Legislature were we to limit the Commission's investi-

gatory powers to those enumerated in § 7(g). Stressing its need for maximum flexibility, and the inadequacy inhering in its subpoena power, the Commission would have us grant it the power to compel answers to interrogatories because it "would prove of enormous help in unlocking the logjam created by respondents refusing to cooperate with Commission investigations." Although the Commission may be correct that upholding a grant of power to compel answers to interrogatories would facilitate its investigations, our examination of the Commission's enabling act, keeping in mind our function as a reviewing court, constrains us to reject its position.

In delimiting the scope of an administrative agency's power, we do not write on a blank slate, and the controlling principles are firmly established:

> "The principle guiding to decision is this: The power and authority to be exercised by administrative commissions must be conferred by legislative language clear and unmistakable. A doubtful power does not exist. Such tribunals are extrajudicial. They should act within the strict and exact limits defined." *Green v. Milk Control Comm'n*, 340 Pa. 1, 3, 16 A.2d 9 (1940).

*See also Volunteer Firemen's Relief Ass'n v. Minehart*, 425 Pa. 82, 227 A.2d 632 (1967); *Community College of Delaware County v. Fox*, 20 Pa.Cmwlth. 335, 342 A.2d 468 (1975). Only those powers within the legislative grant, either express or necessarily implied, can be exercised by the administrative body. *Commonwealth v. American Ice Co.*, 406 Pa. 322, 332, 178 A.2d 768, 773 (1962); *Pennsylvania R.R. v. Pennsylvania Public Utility Comm'n*, 396 Pa. 34, 40, 152 A.2d 422, 425 (1959). It being undisputed that the power to compel answers to interrogatories is not expressly granted by the PHRA, we must deny the Commission this power unless its mandate to "investigate" unlawful discrimination necessarily implies the power to compel answers to interrogatories.

It is important to note that there are substantial differences between subpoenaing an employer's personnel to

testify before the Commission, producing the employer's records and compelling an employer to answer extensive interrogatories inquiring into his employment practices, past records, system for promoting, hiring, and transferring employees, and recruitment practices. The former consumes only the time the Commission is willing to invest, and places the burden on the Commission to elicit information which indicates unlawful discrimination. The latter places a substantial burden on the employer in terms of both time and money, possibly requiring the hiring of additional employes to locate and compile the requested information. More fundamentally, allowing the use of interrogatories relieves the Commission of the burden of investigating possible PHRA violations: it would require the employer, not the Commission, to procure the information which might prove incriminating. In view of these differences, and the fact that the legislature empowered the Commission to subpoena witnesses and documents, we reject the view that compelling answers to interrogatories is necessarily implied in the Commission's investigative powers. The term "investigate" is admittedly broad. Yet simply because interrogatories are one possible method of investigation does not mean that method is necessarily implied in an enabling act conferring the right to investigate.

It is no answer that issuing subpoenas and documents is a more burdensome method of conducting an investigation than sending out interrogatories. Nor is it an answer that the Commission will lose needed flexibility if this power is denied. The focus of this controversy is not administrative convenience, or saving taxpayers money by expediting the Commission's investigative function. We are concerned here with a legislative grant of power to the Human Relations Commission to combat discrimination, a grant accompanied by specific investigative tools backed by judicial enforcement if necessary. The Legislature did not include the power now sought to be confirmed in the Commission. Whether or not this omission was wise is of no moment to this Court. Our function is to interpret the statute accord-

ing to what the Legislature said, not according to what it should have said or might have said.

We are not unmindful of the legislative mandate to broadly construe the provisions of the Human Relations Act to effectuate its purpose, that purpose being to assure equal opportunity to every individual regardless of race, age, sex, or national origin. 43 P.S. § 952(b) (Supp.1977–78). We may not, however, under the pretext of effectuating that intent, or of favoring the public interest over the private interest (see 1 Pa.C.S.A. § 1922(5) (Supp.1977–78)), ignore the letter of the statute or well settled principles concerning the scope of an agency's power.

Our decision today is strongly supported by § 7(k) of the Human Relations Act. That section provides for periodic reports from the Commission to the Legislature, the reports "describing in detail the investigations, proceedings and hearings it has conducted," and instructing the Commission to "make recommendations for such further legislation" concerning unlawful discriminatory practices. 43 P.S. § 957(k). The Commission is claiming before this Court that with the powers given it by § 7(g), it is unduly hamstrung in investigating discrimination. We think that § 7(k) contemplated precisely this kind of situation. The Commission's quest for powers not previously reposed in it should be directed towards the Legislature, not this Court. The Commonwealth Court acted properly in refusing to enforce the Commission's order.

Order affirmed.

JONES, former C. J., did not participate in the consideration or decision of this case.

ROBERTS, J., filed a dissenting opinion in which NIX, J., joined.

ROBERTS, Justice, dissenting.

The majority properly concludes that the complaint filed by appellant Pennsylvania Human Relations Commission (PHRC) against appellee St. Joe Minerals Corporation (St.

Joe) is sufficient under Section 9 of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, as amended, 43 P.S. § 959 (1964 and Supp.1977).

However, the majority goes on to prohibit the PHRC from compelling St. Joe to answer written interrogatories designed to assist the PHRC's determination whether that party is engaging in unlawful discriminatory practices. The majority distorts the governing statutory scheme, undermines the investigatory authority of the PHRC, and flouts sound principles of administrative law. I dissent.

In an effort to combat discrimination against individuals and groups, the Legislature enacted the Pennsylvania Human Relations Act, §§ 1 et seq., as amended, 43 P.S. §§ 951–1003. The Act recognizes several important rights of individuals, id., § 3, as amended, 43 P.S. § 953, and provides that acts of certain parties infringing these rights are unlawful discriminatory practices. Id., § 5, as amended, 43 P.S. § 955.

The Legislature established the PHRC to administer the Act. Id., § 6, 43 P.S. § 956. Sections 6 and 7 confer upon the PHRC broad powers. Id., §§ 6 and 7, as amended, 43 P.S. §§ 956 and 957. Section 6, in relevant part, provides:

"Subject to the provisions of this act, the Commission shall have all the powers and shall perform all the duties generally vested in and imposed upon departmental administrative boards and commissions by the [Administrative Code of 1929, Act of April 9, 1929, P.L. 177, §§ 1 et seq., 71 P.S. §§ 51 et seq. (1962)], and shall be subject to all the provisions of such code which apply generally to departmental administrative boards and commissions."

Section 7, in relevant part, provides:

"*Powers and duties of the Commission*

The Commission shall have the following powers and duties:

. . . . .

(f) To initiate, receive, investigate, and pass upon complaints charging unlawful discriminatory practices.

(g) To hold hearings, subpoena witnesses, compel their attendance, administer oaths, take testimony of any person under oath or affirmation and, in connection therewith, to require the production for examination of any books and papers relating to any matter under investigation where a complaint has been properly filed before the Commission. . . ."

The Act also sets forth a procedural mechanism for dealing with suspect practices. Id., § 9, as amended, 43 P.S. § 959. Section 9, in relevant part, provides:

"After the filing of any complaint, or whenever there is reason to believe that an unlawful discriminatory practice has been committed, the Commission shall make a prompt investigation in connection therewith."

This statutory scheme vests in the PHRC broad authority to ferret out and investigate suspected violations of the Act. Section 6's reference to the Administrative Code of 1929, conferring broad subpoena powers upon administrative departments, Administrative Code of 1929, § 520, 71 P.S. § 200, Section 7's enumeration of specific powers, including power to "initiate, . . . investigate, and pass upon" complaints, conduct hearings, and compel the production of evidence, and Section 9's directive that "prompt investigation[s]" be conducted, demonstrate the importance of the investigatory authority of the PHRC.

Thus, the Legislature recognized the need to give the PHRC full authority to gather information necessary to administer the Act. Professor Schwartz points out the importance of gathering information:

"Information is the fuel without which the administrative engine could not operate; the old saw that knowledge is power has the widest application in administrative law. To exercise its substantive powers of rule-making and adjudication intelligently, the agency must know what is going on in the area committed to its authority."

B. Schwartz, Administrative Law § 34, p. 87 (1976). Adequate information enables the agency to develop a full case against violators, to determine when a violation has not

occurred, and, accordingly, to use its resources most efficiently.

Federal administrative law recognizes the importance of vesting in a regulatory agency the power to gather relevant information. In *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), the Supreme Court enforced an order of the Federal Trade Commission requiring responses to "special reports" aimed at determining whether a company was complying with a cease-and-desist order. There, the agency was not expressly authorized by statute to compel filing of reports describing a company's compliance with a cease-and-desist order. Nonetheless, the Supreme Court upheld the FTC's power to gather the information in the challenged manner by reading other statutory grants of power to the FTC to include the specific circumstances. The Court did so on the theory that the FTC needs such power to perform its statutory role in the regulation of trade.

Here, as in *Morton Salt*, the agency must be able to enforce the law. As Justice Jackson, speaking for a unanimous Court, stated:

> "The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. . . . [I]t does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. . . . [The agency has power] more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law."

Id. at 642–43, 70 S.Ct. at 364. The Human Relations Act's broad delegation of investigatory authority, unrestricted by any language of limitation, gives the PHRC all reasonable

investigatory tools which will assist performance of its statutory responsibilities. Written interrogatories, which are flexible, effective, convenient, and speedy, fulfill this requirement. To hold otherwise would impair the PHRC's ability to pursue the ends contemplated by the Act.

The majority concludes that the hardships on suspected violators, particularly employers, is too great to justify judicial recognition of the PHRC's power to compel answers to written interrogatories, absent express statutory authorization. I do not agree. Nothing in the record indicates that compliance will subject St. Joe or any other party to unreasonable hardships. Nor is the existence of such hardship so indisputable as to justify this Court's recognition of it absent supporting evidence. Indeed, because parties such as St. Joe routinely gather information about their businesses, answering most, if not all, questions should require minimal effort.

If certain interrogatories prove unduly burdensome, a party could challenge them in an orderly manner before the PHRC or in an enforcement proceeding. A court may, when necessary in a particular case, consider the reasonableness of specific interrogatories to which a party has objected and grant the necessary relief. See Pennsylvania Human Relations Act, § 10, as amended, 43 P.S. § 960. But the mere possibility of such occasional hardship cannot justify the majority's blanket prohibition against all written interrogatories. I cannot condone this relegation of the PHRC to rigid procedural devices, frustration of the PHRC's performance of its statutory role, and destruction of the express policy of the Commonwealth in this important area of human relations.

I dissent and would reverse the order of the Commonwealth Court.

NIX, J., joins in this dissenting opinion.