State Real Estate Commission *v.* Roberts,
Appellant.

Argued May 1, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*J. Leon Rabben,* for appellant.

*John P. Fernsler,* Deputy Attorney General, with him *William C. Sennett,* Attorney General, for appellee.

OPINION BY MR. JUSTICE O'BRIEN, November 12, 1970:

Appellant is a licensed real estate broker, having been so licensed since 1936. The facts in this case are as follows:

An investigator employed on behalf of the State Real Estate Commission was given an assignment to make a routine inspection of the appellant's real estate office with instructions to "pay special attention to the escrow account." Pursuant to this assignment, the investigator made four attempts to inspect the appellant's

office records but was not able to do so because appellant was absent on each occasion.

During these visits the investigator identified himself to appellant's secretary, declared the purpose of his visit, left a telephone number where he could be reached, and requested that the secretary relay this information to Mr. Roberts. The appellant never contacted the investigator. On a later visit the investigator spoke to the appellant's wife, again identified himself, stated his purpose and requested that appellant contact him so that an appointment could be made for an inspection. Again the appellant failed to respond. Finally, the investigator made his fifth visit. This time the appellant was present but refused to allow the investigator to make an inspection of his escrow account, stating that his attorney had "advised him there was nothing in the Real Estate Law or Act that compelled him to permit such an inspection by me or any one else, and on the basis of this he would not permit such an inspection."

Pursuant to this refusal, the commission, upon its own motion, issued a citation to the appellant charging, *inter alia*, that he violated Section 10(a) (11) (v) of the Real Estate Brokers License Act of May 1, 1929, P. L. 1216, as amended [63 P.S. 440(a) (11) (v)] by so refusing.

A hearing was held at which the investigator and the secretary of the commission were the only witnesses. The commission found, *inter alia*, that its investigator was refused permission by the appellant to inspect his escrow account and records and that such refusal constituted a violation of Subsection (11) (v) of Section 10(a) of the Real Estate Brokers License Act of 1929. The commission's order was appealed to the Court of Common Pleas of Dauphin County, which affirmed the commission and dismissed the appeal. An appeal to the Superior Court resulted in a per curiam affirmance of the Dauphin County Court, with Judge HOFFMAN fil-

ing a dissenting opinion, in which Judges SPAULDING and CERCONE joined. We granted allocatur.

The appellant alleges that the commission violated his constitutional rights against self-incrimination and unreasonable searches and seizures. What is involved in actuality is the right of the commission to examine the appellant's records without subpoenaing those records, and whether the refusal of a licensee to allow an investigator of the commission to examine his escrow account, standing alone, constitutes a violation of the Act of such nature as to justify suspension of the license.

The Real Estate Brokers License Act of 1929, as amended, 63 P.S. §431 et seq., provides in §10(a) as follows: "(a) The commission . . . shall have the power temporarily to suspend or permanently to revoke licenses . . . when . . . it shall find the holder thereof to have been guilty . . . (11) Of failure to comply with the following requirements . . . (v) Every real estate broker shall keep records of all funds deposited [in escrow accounts]. . . . All such records and funds shall be subject to inspection by the commission."

Appellant, relying on the proposition that because the Act is penal, its provisions must be strictly construed, *Pa. State Real Estate Comm. v. Keller*, 401 Pa. 454, 165 A. 2d 79 (1960), first urges that the Act should not be read to permit a so-called general or routine investigation without any specific allegation or complaint charging wrongdoing.

However, the statute clearly states that the commission may "upon its own motion . . . investigate *any* action or business transaction of any licensed real estate broker or real estate salesman." (Emphasis supplied.) We believe "any action" means "any action," not just one where wrongdoing is suspected, otherwise the commission could not properly exercise its function of the

comprehensive regulation of the business of selling real estate to others. *Verona v. Schenley Farms Co.,* 312 Pa. 57, 167 Atl. 317 (1933).

Appellant next urges that the charge of failure to permit an investigator to examine records is not specifically listed as one of the grounds for revoking or suspending a license. It was this position which influenced the dissent of Judge HOFFMAN in the Superior Court. We do not agree with that interpretation. In our opinion, each of the requirements appearing in Subsection (11) of Section 10(a) of the statute is a separate ground for suspension of a real estate license. The appellant clearly failed to meet the requirement of Subsection (v) that "All such records and funds shall be subject to inspection by the commission." Consequently, there is support for the commission's suspension order.

Appellant next urges that if our interpretation of the statute is correct, the statute is unconstitutional, because a provision compelling real estate brokers to produce their records violates the privilege against self-incrimination. The appellant relies on the case of *See v. City of Seattle,* 387 U.S. 541 (1967), where the Court said at page 544: "It is now settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome."

We believe that appellant's case calls for invoking the "Required Record Doctrine," *Shapiro v. United States,* 335 U.S. 1 (1948), namely, that: "[T]he privilege which exists as to private papers cannot be maintained in relation to 'records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of

governmental regulation and the enforcement of restrictions validly established.' " (Page 33)

*See v. City of Seattle, supra,* did not affect that doctrine. The opinion of Mr. Justice WHITE, speaking for the majority, stated at pages 545 and 546: "We do not in any way . . . question such accepted regulatory techniques as licensing programs which require inspections prior to operating a business or marketing a product."

Appellant contends that he is a private individual conducting a private business and that there is nothing in the law that makes his business or his records "public." We cannot agree. Apparently, appellant does not fully understand the doctrine. In our view, the doctrine applies wherever an individual has voluntarily entered a field which requires licensing by the state. The mere act of entering or remaining in an activity that has become subject to a required recording or reporting of information, as here, where appellant voluntarily became a real estate broker knowing full well that he would be subject to the powers of the State Real Estate Commission to revoke or suspend his license for failure to comply with the statute governing his chosen profession, constitutes a waiver of the privilege against incrimination insofar as the license is concerned. See 65 Columbia Law Review 681, "Required Information and the Privilege Against Self-Incrimination," wherein it is stated at page 687: "[T]he choice to forego protection of the privilege is made by the individual when he decides to engage in the regulated activity. The apparent basis for this general waiver theory is that the individual who wishes to engage in an activity subject to regulation must accept the conditions incident thereto."

The appellant also argues, relying on *Annenberg v. Roberts,* 333 Pa. 203, 2 A. 2d 612 (1938), that the statute is unconstitutional because the commission's blanket

request to see the appellant's escrow account would be an unreasonable search and seizure unless the appellant were first given an opportunity to have a judicial determination of the reasonableness of the demands made by the inspector, as would be present if the commission were forced to proceed to issue a subpoena under Section 13 of the Act, 63 P.S. 443. What was said regarding a waiver of the Fifth Amendment under the required records doctrine also holds true for the Fourth Amendment.

In addition, the United States Supreme Court has said that for a search by an administrative agency to be reasonable, "it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632 (1950).

Here, those three tests were met. The inquiry was, as we have already said, within the authority of the commission. The demand was definite. The inspector clearly informed the appellant that the purpose of the inspection was to verify appellant's escrow account. This was certainly relevant insofar as the statute required that such accounts be carefully kept. 63 P.S. 440(a) (11).

Accordingly, we think that the words of Mr. Justice JACKSON's majority opinion in the *Morton Salt* case apply: "Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that [appellant's] behavior is consistent with the law and the public interest."

Order affirmed.

DISSENTING OPINION BY MR. JUSTICE COHEN:

The State Real Estate Commission, under the majority's opinion, is permitted to impose sanctions on a broker who attempted to withstand a warrantless invasion of his privacy. As early as 1886, in *Boyd v. United States*, 116 U.S. 616, 29 L. ed. 746 (1886), the United States Supreme Court held that Fourth Amendment protections extend in civil, as well as criminal, actions. More recently, in *See v. City of Seattle*, 387 U.S. 541, 18 L. ed. 2d 943 (1967), the Court laid down the general rule that the businessman has a constitutional right to go about his business free from unreasonable intrusions by governmental officials on his business property and that that right is jeopardized by allowing the official in the field to enforce the regulatory laws without official authority evidenced by a warrant.[1]

"It is now settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome. [citing in footnote, *inter alia,* United States v. Morton Salt Co., 338 U.S. 632 (1950); Oklahoma Press Publishing Co. v. Walling, 327 U.S.

---

[1] *Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523, 18 L. ed. 2d 930 (1967), was the companion case to *See*. That case held that an individual, in his residence, has the right to insist that government inspectors, e.g., housing code inspectors or fire department inspectors, obtain a warrant to search and that an individual may not be constitutionally convicted for refusing to consent to a warrantless inspection of his residence by such official. *See* thus served to extend that requirement to business premises. See also, *United States v. Stanack Sales Co., Inc.*, 387 F. 2d 849 (3d Cir. 1968), where the Third Circuit held that the Fourth Amendment protections enunciated in *See v. City of Seattle* extend to business records, at least requiring a carefully delimited subpoena to obtain them.

186 (1946)]. *The agency has the right to conduct all reasonable inspections of such documents which are contemplated by statute, but it must delimit the confines of a search by designating the needed documents in a formal subpoena.* . . . [T]he subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply.

". . . The agency's particular demand for access will of course be measured, in terms of probable cause to issue a warrant, against a flexible standard of reasonableness that takes into account the public need for effective enforcement of the particular regulation involved. But the decision to enter and inspect will not be the product of the unreviewed discretion of the enforcement officer in the field." Id. at 544-45, 18 L. ed. 2d at 947. (Emphasis supplied).

The most recent decision in this area is *The Colonnade Catering Corp. v. United States*, 397 U.S. 72, 25 L. ed. 2d 60 (1970). Colonnade was a licensed New York liquor dealer whose premises were inspected for possible violations of federal law by federal agents acting without a search warrant. The inspection provisions of the statute invoked provided for a $500 fine to be imposed upon any retail liquor dealer who refused to allow agents to inspect his premises. Colonnade refused the agent entry into a locked storeroom and the inspectors broke the lock and seized bottles of liquor. The district court ordered the seized bottles returned and suppressed as evidence, but the court of appeals for the second circuit reversed. The Supreme Court reversed the second circuit and held that since Congress selected a standard for enforcing the inspection provisions of the statute which did not include forcible entry without a warrant, such procedure may not be allowed and the licensee should have been fined as re-

quired by the statute. The Supreme Court decided that Congress has broad power to establish inspection procedure under the liquor laws because of the long recognized interest of governmental control in the liquor industry and the equally long history of governmental regulation in the field. The Supreme Court then reaffirmed its holding in *See v. City of Seattle* for areas other than the liquor industry.

It is thus clear that a subpoena or warrant is required when an administrative agency wishes to inspect business premises, books and records, even if required to be kept by statute. The Real Estate Brokers License Act does contain a subpoena provision, §13, 63 P.S. §443, but that was not used here. The Commission has the duty to insure compliance with the Act, but that duty does not authorize circumvention of the Fourth Amendment's guarantee that a person be secure in his person, house and effects. Thus, appellant's license could not be constitutionally suspended because of his refusal to accede to the warrantless demand of the Commission's investigator in the field.

The majority does not concern itself with the constitutionality of the inspection procedure alone, however, because they also hold that acceptance of a broker's license constitutes a waiver of constitutional rights. The United States Supreme Court has not recognized that theory, however, and has in fact held that mere acceptance of a license is not such a waiver. *Spevack v. Klein,* 385 U.S. 511, 17 L. ed. 2d 574 (1967). See also, *Garrity v. New Jersey,* 385 U.S. 493, 17 L. ed. 2d 562 (1967); *Gardner v. Broderick,* 392 U.S. 273, 20 L. ed. 2d 1082 (1968). It has long been recognized that a waiver of constitutional rights must be knowing, intelligent and voluntary. *Johnson v. Zerbst,* 304 U.S. 458, 82 L. ed. 1461 (1938). Even *Shapiro v. United States,* 335 U.S. 1, 92 L. ed. 1787 (1948), involved the

production of records pursuant to a subpoena. If a policeman, *Garrity v. New Jersey,* supra, and a lawyer, *Spevack v. Klein,* supra, and a teacher, *Slochower v. Board of Higher Education of New York City,* 350 U.S. 551, 100 L. ed. 692 (1956), "are not relegated to a watered-down version of constitutional rights," 385 U.S. at 500, 17 L. ed. 2d at 567, we should not hold that a real estate broker is. A waiver of constitutional protection may not be implied from the mere acceptance of a license, nor may it be forced upon a licensee in such a manner as to make the exercise of his constitutional rights costly. *Spevack v. Klein,* supra; *Griffin v. California,* 380 U.S. 609, 14 L. ed. 2d 106 (1965). Here, a waiver is not present and the exercise of a constitutional right is made costly. Such action should not be permitted.

I would reverse the Commission's order and reinstate appellant's license.

I dissent.

Mr. Justice Eagen joins in this dissenting opinion.

