Commonwealth of Pennsylvania, Department of Labor and Industry, Paul J. Smith, Secretary, Plaintiff *v.* Altemose Construction Company, a Pennsylvania Corporation, and J. Leon Altemose, President of Altemose Construction Company, Defendants.

Commonwealth of Pennsylvania, Department of Labor and Industry, Paul J. Smith, Secretary, Plaintiff *v.* George J. Usuka, Individually, George S. Usuka, Individually, George J. Usuka and George S. Usuka, t/a Usuka Builders and Engineers, Defendants.

Argued December 6, 1976, before Judges KRAMER, WILKINSON, JR. and ROGERS, sitting as a panel of three.

*Herbert S. Cohen,* Assistant Attorney General, with him *Charles.S. Solit,* General Counsel, for plaintiff.

*Kenneth R. Gilberg* and *Vincent J. Fumo,* with them *Pechner, Dorfman, Wolffe & Rounick; John W. Pelino; Max L. Lieberman;* and *Pelino, Wasserstrom, Chucas & Monteverde,* for defendants.

OPINION BY JUDGE ROGERS, January 20, 1977:

The Commonwealth's Secretary of the Department of Labor and Industry (Secretary) has commenced two equity actions. The first, filed March 1, 1976 to No. 359 C.D. 1976, names the Altemose Construction Company and its president, Leon Altemose, (Altemose) as defendants,[1] and the second, filed March 18, 1976 to No. 478 C.D. 1976, names as defendants George J. Usuka and George S. Usuka, individually and trading as Usuka Builders and Engineers (Usuka). By order dated November 23, 1976, we consolidated the actions for hearing.

In each complaint the Secretary alleges that the defendants are contractors engaged in "public work,"

---

[1] This complaint was amended on March 3, 1976 so that "Leon Altemose" would read "J. Leon Altemose."

within the meaning of Section 2(5) of the Pennsylvania Prevailing Wage Act (Act), August 15, 1961, P.L. 987, *as amended*, 43 P.S. §165-2(5),[2] and that they have refused to produce hourly wage records in connection with said work upon request of Department representatives seeking to inspect records to ascertain whether wages paid complied with the standards of the Act.[3] The Secretary, asserting a want of an adequate remedy at law, requests that we enjoin and restrain Altemose and Usuka from transferring, removing or otherwise disposing of the requested payroll records, and that the defendants be directed to deliver or make the records available to the Secretary.

Usuka filed preliminary objections pursuant to Pa. R.C.P. No. 1017(b)(1), alleging that this Court lacks jurisdiction to grant the relief requested. Altemose lodged more detailed and encompassing preliminary objections, alleging not only lack of jurisdiction but demurring generally on the basis of a challenge to the Secretary's capacity to bring suit. The Secretary received Altemose's preliminary objections on April 8, 1976. On April 19, 1976, eleven days after receipt of Altemose's preliminary objections, the Secretary, without permission of court, filed amendments to his complaint to include Section 2203 of the Administrative Code of 1929, Act of April 9, 1939, P.L. 177, *as*

---

[2] " 'Public work' means construction, reconstruction, demolition, alteration and/or repair work other than maintenance work, done under contract and paid for in whole or in part out of the funds of a public body where the estimated cost of the total project is in excess of twenty-five thousand dollars ($25,000), but shall not include work performed under a rehabilitation or manpower training program."

[3] The duty of a contractor or subcontractor engaged in "public work" to maintain wage records is established by Section 6 of the Act, 43 P.S. §165-6.

*amended,* 71 P.S. §563, in support of his power to make the aforementioned inspections. On April 26, 1976, the Secretary filed preliminary objections to the allegations made in Altemose's preliminary objections that the Secretary's inspections were for purposes of harassment and requested that said allegations be stricken pursuant to Pa. R.C.P. No. 1017(b)(2) as being scandalous and impertinent matter. On April 28, 1976, Altemose filed preliminary objections in the nature of a motion to strike the Secretary's April 19, 1976 amendments to his complaint as being untimely under Pa. R.C.P. No. 1028(c), which states that amendments to a complaint challenged by preliminary objections may be filed, as a matter of course, only within the ten day period after service of the preliminary objections.

The preliminary objections of both Altemose and Usuka are now before this Court, all of which we must overrule. The Secretary's preliminary objections in the form of a motion to strike scandalous and impertinent matter in Altemose's preliminary objections are sustained in reference to Altemose's allegations of harassment since such matters are not relevant to the issues of jurisdiction and capacity to sue, and may be properly pleaded under "New Matter" in Altemose's response to the Secretary's complaint and, if proved, considered in connection with the grant, if any, of relief. Pa. R.C.P. No. 1030.

We next address Altemose's preliminary objections raising a question as to the timeliness of the Secretary's April 19, 1976 amendments and decide they are meritless. April 18, 1976, the tenth day of the period fixed by Pa. R.C.P. No. 1028(c) fell on a Sunday. Consequently, this day was, pursuant to Pa. R.C.P. No. 106(b), properly excluded from computation, and April 19, 1976 became the last day for filing.

Defendants' first substantive objection is that the Secretary does not possess the statutory authority to conduct self-initiated, spontaneous inspections of wage records. Both case law and statutory authority is against them. In *Pennsylvania Prevailing Wage Appeals Board, Commonwealth of Pennsylvania v. Steve Black, Inc.,* 27 Pa. Commonwealth Ct. 21, 365 A.2d 685 (1976), we held that ''the Secretary is empowered to supervise compliance with the Act by authorizing field inspectors to make *'routine checkups' at the sites and to audit payroll records independently* to determine whether or not a contractor has failed to pay the minimum wage rates.'' (Emphasis added.) This conclusion was based on Section 2203 of the Administrative Code of 1929, 71 P.S. §563, which provides that:

> The Department of Labor and Industry shall have the power to make investigation surveys upon any subject within the jurisdiction of the department, either upon its own initiative or upon the request of the Industrial Board.

On the matter of inspection of records, Section 6 of the Act, 43 P.S. §165-6 also provides:

> Every contractor and subcontractor shall keep an accurate record showing the name, craft and the actual hourly rate of wage paid to each workman employed by him in connection with public work, and such record shall be preserved for two years from date of payment. *The record shall be open at all reasonable hours to the inspection of the public body awarding the contract and to the secretary.* (Emphasis added.)

Consequently, defendants' reliance on *Pennsylvania Human Relations Commission v. St. Joe Minerals Corp. Zinc Smelting Division,* 24 Pa. Commonwealth Ct. 455, 357 A.2d 233 (1976), for the proposition that

the Secretary is not empowered to make *sua sponte* inspections of wage records is completely misplaced. In *St. Joe* we held that the Human Relations Commission had no power to compel response to interrogatories *because there were no statutory provisions authorizing the Commission* to engage in discovery by written interrogatories.

The defendants apparently next argue that even if the Secretary is empowered to make the inspections in question, equitable jurisdiction to compel cooperation is lacking. Defendants assert that the production of wage records may be compelled in prevailing wage investigation hearings initiated by the Secretary under Section 11 of the Act, 43 P.S. §165-11,[4] and that since the Secretary failed to initiate a

---

[4] Section 11 provides, in pertinent part, that:

(a) The fiscal or financial officer, or any public body having public work performed under which any workman shall have been paid less than the prevailing wage, shall forthwith notify the secretary, in writing, of the name of the person or firm failing to pay the prevailing wage.

(b) Any workman may, within three months from the date of occurrence of the incident complained of, file a protest, in writing, with the secretary objecting to the amount of wages paid for services performed by him on public work as being less than the prevailing wages for such services.

(c) Whenever a fiscal or financial officer of any public body shall notify the secretary that any person or firm required to pay its workmen the prevailing wage under this act has failed so to do, or whenever any workman employed upon public work shall have filed a timely protest objecting that he has been paid less than prevailing wages as required by this act, *it shall be the duty of and the secretary shall forthwith investigate the matter and determine whether or not there has been a failure to pay the prevailing wages and whether such failure was intentional or otherwise. In any such investigation, the secretary shall provide for an appropriate hearing upon notice to interested parties including the workmen, the employer and their respective representative, if any.* (Emphasis added.)

Section 11 investigatory hearing, he has not exhausted his statutory remedies.

It is clear, of course, that this Court possesses original jurisdiction to entertain the proceedings initiated by the Secretary pursuant to Section 401(a)(2) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, *as amended*, 17 P.S. §211--401(a)(2), which provides that:

> (a) The Commonwealth Court shall have original jurisdiction of:
>
> . . . .
>
> (2) All civil actions or proceedings by the Commonwealth or any officer thereof, acting in his official capacity, except proceedings under the Eminent Domain Code.

Likewise apparent is the fact that the Appellate Court Jurisdiction Act of 1970 does not confer upon this Court broader subject matter jurisdiction than existed prior to its enactment. Since traditional concepts of equity jurisdiction govern the instant case, the Secretary must show that all adequate statutory remedies are lacking or have been exhausted before this Court will intervene in equity. *Pennsylvania Human Relations Commission v. United States Steel Corp.*, 10 Pa. Commonwealth Ct. 408, 311 A.2d 170 (1973), *aff'd*, 458 Pa. 559, 325 A.2d 910 (1974). We have been unable to find, either in the Act or the Administrative Code of 1929, 71 P.S. §51 et seq., any statutory provision for the enforcement of the Secretary's power to conduct routine inspections of contractors' wage records, not associated with Section 11 investigatory hearings.[5] Also, the Secretary should not be forced

---

[5] The defendants cite *United States Steel Corp., supra,* in support of their assertion of lack of equity jurisdiction. There the Pennsylvania Human Relations Commission filed a complaint in equity with this Court seeking judicial enforcement of a Commission order that defendant respond to interrogatories posed by the

to initiate a formal hearing to gain access to these records, assuming that production of wage records may be compelled at such a hearing, since one of the purposes of the prehearing inspections is to determine whether a hearing is required at all. Having no legal remedy at hand, the Secretary may properly seek recourse in equity.

Altemose next contends that the Act violates a number of provisions of the Pennsylvania and United States Constitutions. Initially, Altemose asserts that Section 7 of the Act, 43 P.S. §165-7, delegates legislative authority without adequate guidelines and thus violates Article II, Section 1 of the Pennsylvania Constitution which states:

> The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.

Section 7 of the Act provides, *inter alia*, that:

> The secretary shall, after consultation with the advisory board, determine the general *prevailing minimum wage rate* in the locality in which the public work is to be performed for each *craft or classification* of all workmen needed to perform public work contracts during the anticipated term thereof. . . .[6] (Emphasis added.)

Defendant specifically notes that neither "preliminary minimum wage rate" nor "craft or classifica-

---

Commission. We denied equitable relief noting that Section 10 of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §960, conferred upon this Court statutory jurisdiction to enforce lawful orders of the Commission through enforcement proceedings initiated by the Commission and that the Commission could not therefore seek enforcement in equity.

[6] Section 5 of the Act, 43 P.S. §165-5 requires that the prevailing minimum wages so determined be paid to all workmen employed on public work.

tion'' is defined by the Act and that no restrictions are present to guide the Secretary's determination on these matters.

As a general rule, the legislature may not delegate the power to make a law. *Locke's Appeal,* 72 Pa. 491 (1873). However, authority may be delegated within the limits set forth in *Bell Telephone Co. of Pennsylvania v. Driscoll,* 343 Pa. 109, 114, 21 A.2d 912, 914-15 (1941):

> Where the legislature establishes *primary standards* and then delegates to an administrative body the power to determine some fact or state of things upon which it makes or intends to make its own action depend, it is the legislature which has legislated and not the administrative body.

We are of the opinion that ''prevailing minimum wage rate'' of a locality and ''craft classification'' are adequate primary standards to guide the Secretary in the exercise of his duties under Section 7 of the Act, 43 P.S. §165-7. No unacceptably excessive discretion is given to the Secretary. His determination of a minimum prevailing wage for any given craft is limited to specific localities and thus he must, by necessity, consider determinative factors in each locality.[7] Additionally, no benefit would be derived from refinement of ''prevailing'' and ''craft'' beyond their common meanings which are, respectively, ''most fre-

---

[7] This restriction is reflected in and refined by Department of Labor and Industry regulations found at 34 Pa. Code §9-105, which provides in part that the Secretary may consider, in determining the minimum prevailing wage rates, information obtained from certain federal agencies and applicable to the locality; statements signed and certified by contractors, subcontractors and union representatives within the locality; the number of skilled workers within the locality available for employment on public work; and any other pertinent information.

quent,'' ''generally current'' and ''an occupation, trade or pursuit requiring manual dexterity or the application of artistic skills.'' *Webster's New International Dictionary* (3rd ed. 1966).

Next, Altemose contends that the Act violates Article III, Section 31 of the Pennsylvania Constitution which provides that:

> The *General Assembly shall not delegate to any special commission, private corporation or association,* any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever. (Emphasis added.)

This argument requires no answer other than that the Act delegates authority to the Secretary of the Department of Labor and Industry, not to a special commission, private corporation, or association.

Altemose further says that the Act violates Article III, Section 32 of the Pennsylvania Constitution, which reads, *inter alia*, that:

> The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law:
>
> 1. Regulating the affairs of counties, cities, townships, wards, boroughs or school districts:
>
> . . . .
>
> 7. Regulating labor, trade, mining or manufacturing:
>
> . . . .

A law affecting counties, cities, townships, wards, boroughs and school districts, is general, as opposed to special legislation, if it has statewide application in

the Commonwealth. *Roumfort Co. v. DeLaney*, 230 Pa. 374, 79 A. 653 (1911). The Prevailing Wage Act is applicable to "public work" throughout the State and clearly general. Although prevailing minimum wage rates may vary from locality to locality,[8] the procedures used by the Secretary in making his determinations are uniform throughout the Commonwealth. As to the claim of a special regulation of labor, we assume that Altemose is referring to the Act's application to only a specific class of labor—that engaged in "public work." It has been held, however, that "[w]hen a statute is challenged as prohibited special legislation, the reasonableness of the classification made is for the Legislature in the first instance; the duty of the court is limited to considering whether the Legislature had any reasonable ground for making it." *Loomis v. Philadelphia School District of Education*, 376 Pa. 428, 431, 103 A.2d 769, 771 (1954). The Commonwealth would naturally have a greater interest in work done for public bodies than that done for private persons. We think that the challenged classification is both reasonable and proper.

Finally, Altemose urges that the Act, insofar as it empowers the Secretary to inspect the wage records of the contractors engaged in public work, violates the Fourth Amendment of the United States Constitution

---

[8] "Locality" is defined by Section 2 of the Act, 43 P.S. §165-2(2) as:

Any political subdivision, or combination of the same, within the county in which the public work is to be performed. When no workmen for which a prevailing minimum wage is to be determined hereunder are employed in the locality, the locality may be extended to include adjoining political subdivisions where such workmen are employed in those crafts or trades for which there are no workmen employed in the locality as otherwise herein defined.

and Article I, Section 8 of the Pennsylvania Constitution, both of which prohibit unreasonable searches and seizures. None of the cases cited by Altemose are applicable to the facts here. *See generally, United States v. Biswell,* 406 U.S. 311 (1972); *Colonnade Catering Corp. v. United States,* 397 U.S. 72 (1970); *See v. Seattle,* 387 U.S. 541 (1967); *Camara v. Municipal Court,* 387 U.S. 523 (1967); and *State Real Estate Commission v. Roberts,* 441 Pa. 159, 271 A.2d 246 (1970), *cert. denied,* 402 U.S. 905 (1971). *Camara* and *See* stand for the proposition that nonurgent administrative inspections to check compliance with fire, health and housing codes are not permitted by the Fourth Amendment without proper search warrants;[9] *Colonnade* and *Biswell* held, respectively, that liquor and gun dealers licensed under Federal law are subject to inspections without warrants because the pursuits in question are highly regulated and thus, the dealers, in securing their licenses were deemed to have consented to such searches; *Roberts* held that a Pennsylvania real estate broker, licensed under the Real Estate Brokers License Act of 1929, P.L. 1216, *as amended,* 63 P.S. §431 et seq., waived Fourth Amendment protection by seeking and obtaining licensure and was thus subject to routine, warrantless administrative investigations into his records without specific allegation or complaint charging wrongdoing. The Secretary's right to inspect Altemose's records is not premised on the enforcement of fire, health or housing codes, or on implied consent accompanying licensure. The right derives rather from the fact that Altemose contracted with public bodies[10] to do public

---

[9] *Camara* applied this rule to private dwellings and *See* extended it to commercial buildings.

[10] Defined in Section 2(4) of the Act, 43 P.S. §165-2(4), as:
[T]he Commonwealth of Pennsylvania, any of its politi-

work. His contracts specifically provided that such public work was subject to the Prevailing Wage Act and Regulations thereunder. As previously noted, Section 6 of the Act, 43 P.S. §165-6 imposes a duty on the contractor to maintain wage records and authorizes the Secretary to make inspections thereof at all reasonable hours.[11] Altemose explicitly consented to these terms and this consent removes any possible Fourth Amendment arguments.

Accordingly, we enter the following

## ORDER

AND Now, this 20th day of January, 1977, it is ordered that the Preliminary Objections of the Altemose Construction Company and J. Leon Altemose, President of the Altemose Construction Company, and the Preliminary Objections of George J. Usuka and George S. Usuka, t/a Usuka Builders and Engineers, be and they are hereby overruled. The Secretary's motion to strike Altemose's allegations of harassment is hereby granted without prejudice to Altemose's right to raise this issue as New Matter in an Answer to the Secretary's Complaint.

The defendants have leave to file Answers within twenty (20) days after notice of this order.

---

cal subdivisions, any authority created by the General Assembly of the Commonwealth of Pennsylvania and any instrumentality or agency of the Commonwealth of Pennsylvania.

[11] As does also Section 2203 of the Administrative Code, 71 P.S. §563.