OLSZEWSKI, Judge:
Charles F. Arentzen, Jr., appeals from an order finding him in contempt for refusing to file an accounting of his actions as executor of the estate of Leonard F. Baehr and related transactions completed under a power of attorney. The order also remanded Arentzen to the custody of the Sheriff of Philadelphia County until such time as Arentzen purged the contempt by filing the required accounts. This Court granted a stay of Arentzen’s commitment to custody until further order of the court.
On appeal, Arentzen asserts that he cannot be forced to file the accountings, because to do so would violate his right against self-incrimination under the Fifth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution.[1] Arentzen also claims that if the finding of contempt was proper, the trial court had no power to imprison him as he acted indirectly through his attorney. Therefore, Arentzen concludes, he did not personally refuse to comply with the trial court’s directives and so was not guilty of direct contempt and cannot be imprisoned. After consideration of Arentzen’s arguments, we affirm the trial court’s order, vacate the stay and remand Arentzen to the custody of the Sheriff of Philadelphia County until such time as he purges himself of the contempt by filing the required accountings.
The factual history of this case may be summarized as follows. On January 28, 1988, the decedent Baehr appointed Arentzen attorney-in-fact and agent by a power of attorney. (Appellant’s brief at 4.) Upon Baehr’s death in November 1988, Arentzen was appointed executor of Baehr’s *176 will. (Trial court opinion at 1.) Arentzen filed an inventory with the Orphans’ Court on August 29, 1989, listing assets of the estate in excess of $1,500,000.00. (Id. at 2.)
A dispute arose over the validity of a codicil to the decedent’s will dated August 8, 1988. (Id. at 1.) That codicil revokes residual gifts to the decedent’s two granddaughters and leaves his estate to his daughter, Joyce Furst. (Id.) The disinherited granddaughters filed a petition with the Orphans’ Court alleging that Arentzen had engaged in improper conduct during his administration of the decedent’s estate. (Id. at 2.) At a hearing on this petition, Arentzen agreed to resign his appointment as executor. (Id. at 3.) The Orphans’ Court entered a decree ordering Arentzen to file an account of his administration of the estate and an account of any transactions occurring pursuant to the power of attorney. (Id.) Said accountings were to be filed within 60 days. (Id.)
Arentzen declined to file the required accountings because he claims that to do so would force him to incriminate himself. Arentzen based his claim upon a grand jury subpoena issued to Joyce Furst. (Appellee’s brief, exhibit “C”.) Although the subpoena does not specify the subject of the investigation, Arentzen’s counsel claims that an unidentified deputy district attorney informed him that Arentzen was the target of the investigation, which concerned Arentzen’s handling of the estate and activities pursuant to the power of attorney. (Trial court opinion at 4.) The counsel for the decedent’s estate testified that other grand jury subpoenas had been issued to his staff and that the investigation did target Arentzen. (Reproduced record [R.R.] at 14a-15a.)
The Orphans’ Court found Arentzen in contempt for refusing to file the accountings. This appeal followed. As an initial matter, we note our extremely narrow standard of review. On appeal from a finding of contempt, our inquiry is limited to an examination of whether the trial court committed a clear abuse of discretion. East & West Services Corp. v. Papahagis, 344 Pa. 188, 189-190, 25 A.2d 341, *177 342 (1942) (citations omitted). With this standard in mind, we examine Arentzen’s claims;
When the privilege against self-incrimination is invoked, the Court must ascertain whether the witness is entitled to the protection claimed. Commonwealth v. Carrera, 424 Pa. 551, 552-553, 227 A.2d 627, 629 (1967). Prosecution need not be imminent to justify the exercise of the privilege, a reasonable cause for the witness to apprehend a danger of prosecution is sufficient. Id. Further, it is clear that the privilege can be claimed in a civil as well as criminal proceeding. United States Steel & Carnegie Pension Fund v. Decatur, 364 Pa.Super. 294, 296-298, 528 A.2d 165, 166-167 (1987).
The trial court noted that the evidence did not support Arentzen’s contention that he had reasonable cause to apprehend a danger of prosecution. (Trial court opinion at 6.) We disagree. It is indisputable that a grand jury investigation is in fact occurring. Arentzen was informed by two separate sources that he was the target. The staff of counsel for the decedent’s estate has been subpoenaed, as well as Furst, who was alleged to have aided Arentzen in unduly influencing the decedent. The totality of the circumstances presented in the record must be examined to determine whether a witness invoking the privilege has reasonable cause to fear prosecution. Carrera, supra. See also, Commonwealth v. Franklin, 397 Pa.Super. 265, 273-274 n. 8, 580 A.2d 25, 29 n. 8 (1980) (citations omitted). The circumstances described above are more than enough to give a reasonable man cause for apprehension. A witness need not be sure that prosecution will occur if he testifies, he need only reasonably fear prosecution to invoke the privilege. Carrera, supra. We hold that Arentzen properly invoked the privilege. This, however, does not end our inquiry. The privilege is not absolute, there are exceptions which will require the witness to testify despite the applicability of the privilege. Accordingly, we turn to an examination of whether such an exception applies here.
*178 The trial court relied upon the “collective entity” exception in ordering Arentzen to file the required accountings. (Trial court opinion at 7-10, citing, Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); Wheeler v. United States, 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309 (1913); Grant v. United States, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913); United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); United States v. Fleischman, 339 U.S. 349, 70 S.Ct. 739, 94 L.Ed. 906 (1950); Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); McPhaul v. United States, 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136 (1960); and Bellis v. United States, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974).) In essence, the trial court determined that the accountings were records belonging to the estate, an entity separate from Arentzen. As these accountings do not belong to Arentzen, and as the privilege is personal, the trial court concluded that Arentzen cannot invoke the privilege to avoid filing the accountings.
Arentzen responds by disputing the applicability of the “collective entity” exception. Arentzen asserts that the exception only applies to a custodian of records already in existence. Arentzen agrees that a custodian of the records of a collective entity cannot refuse to produce the records by invoking the privilege against self-incrimination. Arentzen distinguishes the present situation as follows: he is not a custodian of the required accountings as they do not yet exist, he has produced all existing financial records of his dealings with the estate and under the power of attorney, and the trial court is now attempting to force him to incriminate himself with the equivalent of oral testimony concerning his affairs in maintaining those records, which is specifically prohibited; therefore, he is not in contempt. (Appellant’s brief at 9-10, citing, Braswell v. United States, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988) and Curdo v. United States, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957).)
*179 We need not address this dispute, as we find that the trial court’s order to file the accountings is amply supported by a different exception to the privilege against self-incrimination. See, Krenzelak v. Krenzelak, 503 Pa. 373, 381, 469 A.2d 987, 991 (1983) (citation omitted) (court should not address constitutional question unless absolutely necessary). See also, Johnson v. Earl Scheib, Inc., 352 Pa.Super. 278, 282, 507 A.2d 1228, 1230 (1986) (citation omitted) (appellate court may affirm a correct ruling of the trial court on an alternate legal theory from that employed below).
We find that the “required records” exception to the privilege applies to the facts herein.[2] The required records exception was announced by the United States Supreme Court in Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), wherein the Court stated “records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subject of government regulation” are not protected by the privilege. Id. at 17, 68 S.Ct. at 1384, 92 L.Ed. at 1799 (quoting, Davis v. United States, 328 U.S. 582, 589-590, 66 S.Ct. 1256, 1260, 90 L.Ed. 1453 (1946)). The exception does not apply if the purported government regulation specifically targets individuals suspected of criminal activities. See Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968). Nonetheless, if the government’s purposes are essentially regulatory, the requested records are normally kept by the regulated party, and the records have assumed public aspects, the exception applies. Grosso, supra, 390 U.S. at 67-68, 88 S.Ct. at 713, 19 L.Ed.2d at 912. It has also been held that a valid regulation requiring the records implies an obligation to create those records. In re Grand *180 Jury Proceedings (McCoy), 601 F.2d 162, 171 (5th Cir. 1979).[3]
The requested accounting clearly meets the Grosso tripartite requirements. Administration of an estate is the subject of extensive government regulation. See, The Probate, Estate and Fiduciary Code, 20 Pa.C.S.A. § 101 et seq. Orphans’ Court may direct the executor to file an accounting at any time. 20 Pa.C.S.A. § 3501.1. Thus, the purpose of the statutory scheme is essentially regulatory. See, Quality Lumber & Millwork Co. v. Andrus, 414 Pa. 411, 419-420, 200 A.2d 754, 759 (1964) (interpreting prior statute dealing with identical subject matter). Nor are executors of *181 estates, even those who resign before completing the administration of the estate, a “selective group inherently suspect of criminal activities.” Marchetti, supra, 390 U.S. at 57, 88 S.Ct. at 707, 19 L.Ed.2d at 903 (citation omitted). Accountings are records normally kept by an executor who resigns his position. See, In re Burn’s Estate, 401 Pa. 556, 165 A.2d 379, 381 (1960). Accountings have public aspects, they become part of the court record and can be demanded by persons having a claim against the estate. In re Dixon’s Estate, 426 Pa. 561, 564-565, 233 A.2d 242, 245 (1967) (citations omitted). An accounting also assures public confidence in the handling of an estate, a separate public aspect.
Finally, a person who voluntarily enters a field where it is established that records must be kept, waives the privilege against incrimination as to the required records. State Real Estate Commission v. Roberts, 441 Pa. 159, 165-166, 271 A.2d 246, 249 (1970) cert. denied, 402 U.S. 905, 91 S.Ct. 1367, 28 L.Ed.2d 645 (1971) (citation omitted). See also, In re Grand Jury Proceedings, supra. Arentzen was not forced to accept appointment as the executor of Baehr’s estate. He also voluntarily accepted the powers granted him under the power of attorney. Accordingly, he has waived the privilege as regards the accountings which he has been ordered to file.[4]
*182 Arentzen’s final contention is that imprisonment is not the proper sanction for this contempt, as he has not directly refused to comply with the trial court’s order. Arentzen argues that his contempt was indirect in that he did not directly refuse the court’s order while in the presence of the court. Arentzen relied upon a sworn affidavit and the responses of his counsel. Therefore, Arentzen would have us hold that imprisonment was improper. (Appellant’s brief at 11-12.) We disagree.
A court is specifically empowered to imprison a party for disobedience of the lawful process of the court occurring in open court. 42 Pa.C.S.A. §§ 4132(2), 4133. See also, Grubb v. Grubb, 326 Pa.Super. 218, 473 A.2d 1060 (1984). Arentzen refused to comply with the trial court’s direct verbal order to file the accountings. (R.R. at 9a-10a.) The fact that Arentzen’s argument was presented by his counsel in no way changes the fact that the order was directed to him and he refused to comply. Arentzen was present in court when his refusal was presented by his counsel. To adopt Arentzen’s contention would prevent a court from imprisoning any party for contempt so long as the party was represented by counsel and acted only through counsel. We will not so restrict the powers of a court to deal with contumacious behavior.
In summary, we hold that Arentzen properly invoked the protection of the privilege against self-incrimination; that the required records exception applies to the accountings at issue and therefore, Arentzen must create and submit those documents; and finally, that imprisonment was the proper sanction for Arentzen’s refusal to comply with the trial court’s order. Order of contempt affirmed. Order granting stay of contempt order vacated. Case remanded for *183 proceedings in accord with above decision. Jurisdiction relinquished.
Dissenting opinion by CIRILLO, J.

. Federal standards govern invocation of the privilege against self-incrimination in a state court proceeding. Commonwealth v. Carrera, 424 Pa. 551, 552-554, 227 A.2d 627, 629 (1967).

. The applicability of this exception was brought to our attention by an amicus curiae brief.

. In addressing the applicability of the collective entity exception to the privilege, Arentzen distinguished the act of producing the estate’s records, which he has already done and which is clearly required under the collective entity doctrine, from the act of creating and submitting the accounting, which, he claims, is a violation of the privilege. There is authority that the collective entity exception does not require a custodian of records to present oral testimony explaining the records: though the act of producing the records is testimonial to the extent that it identifies the records as those sought, still, the custodian "cannot lawfully be compelled, in the absence of a grant of adequate immunity from prosecution, to condemn himself by his own oral testimony.” Curdo v. United States, 354 U.S. 118, 123-124, 77 S.Ct. 1145, 1149, 1 L.Ed.2d 1225, 1229-1230 (1957). Nonetheless, this line of authority is not applicable to the required records exception. That exception specifically allows the government to require individuals, by law, to keep records so “that there may be suitable information of transactions which are the appropriate subjects of governmental regulation.” Shapiro, supra, 335 U.S. at 33, 68 S.Ct. at 1392, 92 L.Ed. at 1807 (emphasis added). Under this exception, the question is not whether Arentzen can be required to turn over records of a separate entity which are in his custody, rather, the inquiry addresses the three prong test for whether the government can require Arentzen, to maintain a certain type of record as an individual, not as a custodian. If the records in question are of the type normally kept, the purpose is essentially regulatory and the records have assumed public aspects, an individual can be required to create and produce them despite their equivalence to oral testimony. Grosso, supra. See abo, Shapiro, 335 U.S. at 17-18, 68 S.Ct. at 1384, 92 L.Ed. at 1798-1799 “business records kept under requirement of law by private individuab in unincorporated enterprises were ‘public documents which defendant was required to keep, not for his private use, but for the benefit of the public, and for public inspection.’" (Footnote omitted, emphasis added and deleted). Thus the government can validly require an individual to create such records. Id. at n. 24 (citation omitted).

. We note that the nature of the waiver in the required records exception differs from that inherent in the collective entity exception. A custodian of the records of a collective entity "has voluntarily assumed a duty which overrides his claim of privilege only with respect to the production of the records themselves." Wilson v. United States, 221 U.S. 361, 380, 31 S.Ct. 538, 544, 55 L.Ed. 771, 779 (1911) (emphasis in original). By contrast, the required records exception by its very name indicates that the government can, by law, require that certain types of records be kept. Shapiro, supra. See also, State Real Estate Commission, supra 441 Pa. at 165, 271 A.2d at 249 ("The mere act of entering or remaining in an activity that has become subject to a required reporting or recording of information ... constitutes a waiver of the privilege against incrimination insofar as the [activity] is involved.”). Unlike the collective entity exception, the required records exception applies to the person in his individual capacity, not merely in his custodial capacity, thereby broadening the extent of the waiver involved. See, In re Grand Jury Proceedings, supra at 171: “These obligations to keep and produce the records are in a sense *182 consented to as a condition of being able to carry on the regulated activity involved." Indeed, the exception would have little application if an individual could say: Yes, if the records existed I would be required to turn them over to the government, however, as I have refused to comply with the regulations by failing to create the records, I am entitled to invoke the privilege. The implied duty to create the records by entering the regulated field refutes such an argument.