Commonwealth of Pennsylvania, Acting by Attorney General Israel Packel *v.* Edward C. Shults, President, Active TV Service of America, Inc., Appellant.

130

Argued April 5, 1976, before President Judge Bow-
man and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*Gilbert B. Abramson,* with him *Jeffrey M. Freedman,* and *Eilberg, Corson, Getson & Abramson,* for appellant.

*John E. Kelly,* Assistant Attorney General, with him *Joel Weisberg,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, August 17, 1976:

This is an appeal from an order of the Philadelphia County Court of Common Pleas finding Edward C. Shults, President, Active TV Service of America, Inc. (appellant), in contempt of court for willful violation of that court's prior order directing him to comply with a subpoena issued and served by the Pennsylvania Bureau of Consumer Protection (Bureau) under authority of the Attorney General.

On September 6, 1974, the Bureau issued a subpoena pursuant to Section 919 of The Administrative Code of 1929[1] (Code), directing appellant to appear at a private hearing and to bring documentary materials relating to certain enumerated aspects of his television repair business which had been under investigation by the Bureau for several months. After appellant refused to appear, the Commonwealth sought and obtained in the court below, an order, dated January 2, 1975, to compel compliance with the subpoena.

An appeal (No. 80 C.D. 1975) and a petition for supersedeas to this Court followed. By Order of Jan-

---

[1] Act of April 9, 1929, P.L. 177, *added* by the Act of December 17, 1968, P.L. 1221, 71 P.S. §307-3.

uary 30, 1975, Judge ROGERS granted a supersedeas of the order of the lower court with regard to oral testimony but denied the same with regard to the production of documentary materials. After appellant again refused to produce the subpoenaed materials, the Commonwealth initiated contempt proceedings which resulted in the order from which the present appeal was taken.[2]

Since the appellant admits refusal to obey the initial compliance order of the court below, the issue here becomes the validity of that order, or more precisely, the validity of the underlying subpoena. The scope of judicial inquiry in a subpoena enforcement action is whether "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *see also Pennsylvania Crime Commission v. Nacrelli*, 5 Pa. Commonwealth Ct. 551, 577 (1972).

The thrust of appellant's attack on the subpoena is based on the first leg of the three-legged test developed in *Morton Salt Co., supra,* that the investigation is not within the authority of the Bureau. Appellant argues that the subpoena was issued for the purpose of preparing for litigation, specifically an injunctive action pursuant to Section 4 of the Unfair Trade Practices and Consumer Protection Law[3] (hereinafter UTPCPL), and that a subpoena issued for such purpose is not authorized by Section 919 of the Code. As evidence that the Bureau's investigation had shifted from an ostensibly authorized purpose to that of pre-

---

[2] The initial appeal of the compliance order (No. 80 C.D. 1975) has not been consolidated with the present appeal of the contempt order. However, our disposition of this appeal will necessarily render the initial appeal moot.

[3] Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §201-4.

paring for litigation, appellant cites a letter received from a Bureau attorney on July 2, 1974, prior to the issuance of the subpoena. The letter states:

"Pursuant to the policy of the Attorney General, this is to advise you that after an extensive investigation, this office intends to initiate action against the above captioned business [Active TV Service of America, Inc.] and its officers. This action will be taken under the Unfair Trade Practices and Consumer Protection Law. (73 P.S. §201-1)

"If you wish to discuss this matter prior to filing of suit, either you or your attorney should contact me."[4]

Appellant asserts that the Bureau, having decided to bring suit, is now attempting through the subpoena to engage in a "fishing expedition" under the guise of its investigatory powers, thus, in effect, bootstrapping itself into the suit, as well as achieving pretrial discovery without the limitations and mutuality provided by the Pennsylvania Rules of Civil Procedure.[5]

---

[4] For reasons unknown to this Court, this letter was not made part of the printed record. It was, however, attached to the appellant's answer to the Commonwealth's petition to compel compliance with the subpoena in the lower court action, and we shall consider it as part of the record.

[5] Appellant, in fact, attempted to employ discovery under the Pennsylvania Rules of Civil Procedure in the initial compliance proceedings below, to depose Bureau attorneys with respect to their purpose in issuing the subpoena. The Bureau attorneys refused to be deposed, and the court below denied appellant's motion for sanctions, holding that depositions are not available in investigatory subpoena enforcement proceedings. This issue is not raised on appeal, and we need not explore it. We note, however, that courts have generally discouraged the injection of collateral issues and the assertion of a broad range of due process rights by persons who are the subject of an investigatory as opposed to an accusatory or adjudicatory proceeding, as such collateral inquiries hamper the effectiveness of the investigatory process. *Hannah v. Larche*, 363

The Commonwealth responds first that litigation pursuant to Section 4 of the UTPCPL *is* one of the Bureau's functions under the Code so that even if preparation for such litigation was the purpose of the subpoena, it would nevertheless be valid. However, the Commonwealth argues such was not the purpose, and the letter of July 2, 1974, was not meant to indicate that the investigation had terminated. Rather it was designed to advise appellant of the possibility of litigation and to elicit his cooperation in the Bureau's investigation and/or resolution of the matter. Further, the Commonwealth asserts that the Bureau can move beyond its investigatory phase only by the actual filing of suit and that any expression of intent by a staff attorney is, in any event, irrelevant to the validity of the subpoena.

The court below held that appellant's contention that injunctive proceedings might be initiated in the future was mere speculation in the absence of the actual filing of suit, and that such contention could not affect the validity of the subpoena. We affirm, but on somewhat different grounds requiring some elaboration because of the importance of the issues raised with respect to the Bureau's authority under the Code.

At the onset, we reject the Commonwealth's view that the bringing of actions to enjoin unlawful acts and practices under the UTPCPL is one of the Bureau's functions under the Code. Section 918 of the Code, 71 P.S. §307-2, provides:

"The Bureau of Consumer Protection shall have the power and its duties shall be:

"(1) To investigate commercial and trade practices in the distribution, financing and furnishing of

U.S. 420 (1960) ; *Morton Salt Co, supra; Genuine Parts Co. v. F.T.C.*, 445 F.2d 1382 (5th Cir. 1971) ; *Nacrelli, supra.*

goods and services to or for the use of consumers in order to determine if such practices are detrimental to the public interest, and to conduct studies, investigations and research in matters affecting consumer interest, advise the executive and legislative branches on matters affecting consumer interest, assist in developing executive policies and develop draft and propose legislative programs to protect the consumer.

"(2) To investigate fraud, misrepresentation and deception in the sale, servicing and financing of consumer goods and products. To promote consumer education and to publicize matters relating to consumer frauds, deception and misrepresentation.

"(3) To do such other acts as may be incidental to the exercise of its powers and functions."

We note that the operative verbs in this delegation of authority are "investigate," "advise," "propose," and "promote." There is no language indicating any authority in the Bureau to "enforce," "restrain," "bring an action," etc., and certainly no reference to the UTPCPL per se.

Nonetheless, the Commonwealth offers three arguments for construing the Code provisions as implicitly authorizing the Bureau to bring such actions. First, the Commonwealth argues that the purpose in having the Bureau determine whether commercial and trade practices are "detrimental to the public interest" (Section 918(1) of the Code) is none other than to facilitate litigation under Section 4 of the UTPCPL, which provides, in pertinent part:

"Whenever the Attorney General or a District Attorney has reason to believe that any person is using or is about to use any method, act or practice declared . . . to be unlawful, *and that proceedings would be in the public interest,* he may bring an action . . . to restrain by temporary or permanent injunction the

use of such method, act or practice." (Emphasis added.)

To suggest that these two references to the "public interest" somehow contemplate or create a power *in the Bureau* to do what is clearly delegated to the Attorney General or a district attorney is to torture the principles of statutory construction beyond rationality. We recognize that the Bureau, as part of the Department of Justice, may be delegated authority by the Attorney General and apparently has been delegated the authority to bring this type of action. However, that fact does not alter the *source* from which such authority is derived, and, in this case, it is derived from Section 4 of the UTPCPL itself and not from the Code.

We are similarly unconvinced by the Commonwealth's argument that the power to bring injunctive actions under the UTPCPL is conferred on the Bureau in Section 918(3) of the Code as "incidental to the exercise of its powers and functions." This clause grants authority to do incidental *acts* but does not expand the powers and functions beyond those granted in the first two clauses. We cannot believe that the legislature, having clearly delegated a specific power to the Attorney General and to district attorneys under the UTPCPL, then intended to confer the exact same power as "incidental" to the Bureau's functions under the Code.

We also reject the Commonwealth's third argument that Section 919(b) of the Code contemplates the routine use of materials subpoenaed during a Bureau investigation in subsequent litigation brought under the UTPCPL. The Commonwealth relies on the following provision of that section:

"The Attorney General or any attorney designated by him may use such documentary material or copies thereof as he determines necessary in the enforcement

of *this act,* including presentation before any court: ...." (Emphasis added.)

The words "this act" clearly refer to the provisions of the Code (Sections 919-22, 71 P.S. §§307-3 to -6) relating to the establishment and functioning of the Bureau and most certainly do not refer to the UTPCPL. Further, except for the above provision and another exception to allow copying by the person who supplied the particular material, Section 919(b) of the Code prohibits, in the absence of consent or a court order, disclosure of materials produced pursuant to a Bureau demand or subpoena:

"No documentary material produced pursuant to a demand under this section shall, unless otherwise ordered by a court for good cause shown, be produced for inspection or copying by, nor shall the contents thereof be disclosed to any person other than the authorized employe of the Attorney General without the consent of the person who produced such material: ...."

Thus it appears clear that, absent a court order, any documentary material obtained by subpoena under Section 919 of the Code, *cannot* be used in any subsequent injunctive action brought under Section 4 of the UTPCPL by the Attorney General, a district attorney, or the Bureau itself under authority delegated by the Attorney General. We do not view this result as a mere technicality based on a strict reading of the Code provision. Rather, it follows quite logically from our determination that enforcement of the UTPCPL is *not* among the Bureau's functions under the Code. The Bureau's functions and the uses to which it may put the materials produced by Section 919 investigative subpoenas, are, instead, those of advising the executive and legislative branches, developing and proposing legislative programs, promoting consumer education, and the like, as provided in Section 918 of the

Code. In this regard, we have very recently restated the principle " 'that the power of an administrative agency must be sculptured precisely so that its operational figure strictly resembles its legislative model.' " *Pennsylvania Human Relations Commission v. St. Joe Minerals Corporation Zinc Smelting Division,* 24 Pa. Commonwealth Ct. 455, 458, 357 A.2d 233, 235 (1976), *citing Community College of Delaware County v. Fox,* 20 Pa. Commonwealth Ct. 335, 351, 342 A.2d 468, 478 (1975).

The Commonwealth's strained efforts to engraft the provisions of the UTPCPL onto the Code are not only without legal merit but are wholly unnecessary. For not only does the UTPCPL provide quite adequately for its own method of enforcement through actions by the Attorney General or a district attorney (Section 4), but it also provides in Section 6, 73 P.S. §201-6, a method of obtaining information from possible violators for use in Section 4 actions—that is, the civil investigative demand. Significantly, the authority of the Attorney General under Section 6 is somewhat more restricted than the general investigative authority granted the Bureau under the Code and contains some of the safeguards appellant claims he is being denied because of the Bureau's failure to proceed with discovery under the Pennsylvania Rules of Civil Procedure.[6] It is both logical and consistent with case law that the power to compel the production of information for use in *adjudicatory* as opposed to *purely investigatory* proceedings is more restricted. *See* cases *supra* note 5.

---

[6] In an action brought under the UTPCPL, the Attorney General may use discovery under the Rules of Civil Procedure *as well as* the civil investigative demand provided in Section 6. *See* note 3 in *Commonwealth v. Monumental Properties,* 459 Pa. 450, 456, 329 A.2d 812, 814 (1974).

We have now determined that the appellant's real concern in this case—that the Bureau will use the subpoenaed materials in future litigation under the UTPCPL—is illusory since the material cannot, in any event, be put to that use. Beyond this, however, we are not convinced that the Bureau attorney's communication of an intent to sue necessarily invalidates the subpoena under the *Morton Salt Co.* criteria where the investigation is otherwise within the authority of the Bureau.

Section 919(a) of the Code provides, in pertinent part:

"The Attorney General shall be authorized to require the attendance and testimony of witnesses and the production of any books, accounts, papers, records, documents, and files *relating to any commercial and trade practices which the Bureau of Consumer Protection has authority to investigate* and conduct private or public hearings . . . ." (Emphasis added.)

In the present case, the Bureau was engaged in an investigation of possible "fraud, misrepresentation and deception in the sale, servicing and financing of consumer goods" within the clear authority of Section 918(2) of the Code. This would appear sufficient to pass muster under the first leg of the *Morton Salt Co.* test. To the extent that the particular attorney may have been motivated by the desire to prepare for an injunctive action under the UTPCPL, such motive is frustrated by our holding above. And to the extent that the Bureau may use the information obtained for any other of the purposes authorized by the Code— advising the executive and legislative branches, proposing legislation, promoting consumer education and publicizing matters relating to consumer frauds, deception and misrepresentation—then the subpoena is, of course, perfectly valid. We view the requirement

under *Morton Salt Co., supra,* that the subpoena be within the authority of the agency as being satisfied if the information sought is relevant to *some* lawful purpose of that agency under the act by which the subpoena was issued. *See* 1 K. Davis, Administrative Law Treatise 221 (1958), *citing Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 509 (1943). *See also Nacrelli, supra,* 5 Pa. Commonwealth Ct. at 575. Moreover, were we to allow the validity of the subpoena to turn on the subjective intent of an agency's staff attorneys, we would open the door to a host of collateral attacks on the investigatory process and on subpoenas otherwise valid on their face. This is exactly what the courts have tried to prevent with respect to limiting the range of due process rights enjoyed by those who are the subject of a purely investigatory proceeding. *Hannah, supra; Nacrelli, supra.*

It is, of course, true that the Bureau may, in the course of an investigation pursuant to the Code, including the use of a subpoena, uncover information which would lead it to determine that an injunctive action under the UTPCPL might be appropriate. It could then, under authority from the Attorney General, seek a civil investigative demand and obtain the very same materials for use in the injunctive action. In view of the fact that the legislature has seen fit to establish the Bureau under the Code as an investigatory and advisory agency with certain authority and, at the same time, as a part of the Department of Justice subject to the delegation of the Attorney General's powers of enforcement, this result does not strike us as peculiar, although the dual sources of authority certainly raise some complex issues, as this case amply demonstrates. Moreover, we do not view the fact that a proceeding initiated under purely investigative and advisory authority may eventually result in injunctive proceedings as particularly unfair.

The United States Supreme Court, in the *Morton Salt Co.* case cited by the appellant, stated.

"[N]either incorporated nor unincorporated associations can plead an unqualified right to conduct their affairs in secret.

"While they may and should have protection from unlawful demands made in the name of public investigation . . . corporations can claim no equality with individuals in the enjoyment of a right to privacy." 338 U.S. at 652 (Citations omitted.)

There appears no reason why the Bureau, while discharging its duty to investigate commercial and trade practices under the Code, cannot, under proper facts, then switch to the use of enforcement authority delegated by the Attorney General under the UTPCPL, as long as the source of authority at a particular point in time is made clear. This appears to be the only way to reasonably reconcile the legislative provision of two separate investigative procedures under the Code and under the UTPCPL.

Even if this process results in some limited "fishing," we cannot say that it is objectionable under *Morton Salt Co., supra:*

"We must not disguise the fact that sometimes, especially early in the history of the federal administrative tribunal, the courts were persuaded to engraft judicial limitations upon the administrative process. The courts could not go fishing, and so it followed neither could anyone else. Administrative investigations fell before the colorful and nostalgic slogan 'no fishing expeditions.' It must not be forgotten that the administrative process and its agencies are relative newcomers in the field of law and that it has taken and will continue to take experience and trial and error to fit this process into our system of judicature. More recent reviews have been more tolerant of it than those which underlay many older decisions.

"The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so." 338 U.S. at 642. (Citations omitted.)

"Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest." 338 U.S. at 652; *see also Nacrelli, supra,* 5 Pa. Commonwealth Ct. at 577.

The appellant has made two additional arguments based on the second and third legs of the *Morton Salt Co.* test. The first of these is that the demand of the subpoena is "too indefinite." We have reviewed the subpoena and find appellant's argument without merit and unsupported by authority. To the contrary, we find the demands specific and reasonable in terms of the Bureau's authority to investigate. We do not feel that production of the requested materials will result in an unreasonable annoyance or harassment of appellant.

Finally, appellant argues that the information requested is not reasonably relevant to the purposes of the Code. This argument is interrelated with appellant's major attack based on the Bureau's authority, and we reject it on the grounds discussed above.

### ORDER

Now, August 17, 1976, the order of the court below of March 6, 1975, finding appellant in contempt of court, is hereby affirmed with remand to the court below for consideration of an extension of the time contained in its order providing for remission of fine upon compliance with its prior order directing compliance with the subpoena.