IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,    :
Office of Attorney General,    :
           Petitioner    :
    :
    v.    :  No. 116 M.D. 2019
    :  ARGUED: September 11, 2019
Nisha Patel,    :
           Respondent    :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION
BY JUDGE CEISLER           FILED: October 29, 2019

Before this Court is a "Petition to Compel Compliance with Subpoena" (Petition) filed by the Office of Attorney General (OAG) against Respondent Nisha Patel (Patel). After careful review, we deny the OAG's Petition.

## I.  Background

In support of its Petition, the OAG alleges the following:

1. In June 2018, the Commonwealth of Pennsylvania (Commonwealth), along with several dozen states, filed a complaint against multiple pharmaceutical companies alleging they engaged in a price-fixing scheme which reduced competition and artificially inflated generic pharmaceutical

prices. That matter is currently pending before the United States District Court for the Eastern District of Pennsylvania (U.S. District Court);

2. The OAG continues to investigate allegations of price fixing in the generic pharmaceutical industry, as well as potential violations of the Unfair Trade Practices and Consumer Protection Law (CPL),[1] which prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce;

3. Section 919(a) of The Administrative Code of 1929 (Administrative Code)[2] authorizes the Attorney General to compel the testimony of witnesses and the production of documents and files relating to commercial and trade practices "which the [OAG]"[3] has authority to investigate. Petition, ¶ 19. The Attorney General has discretion to use subpoenaed material as he deems necessary by virtue of Section 919(b) of the Administrative Code. 71 P.S. § 307-3(b).

4. Patel engaged in trade and commerce in the generic pharmaceutical industry within the Commonwealth;

5. Pursuant to Section 919(a) of the Administrative Code, the Attorney General issued a subpoena to Patel, requesting "all cell phone data, including but not limited to any text messages or iMessages, from July 3,

---

[1] Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201-1 – 201-9.3.

[2] Act of April 9, 1929, P.L. 177, *as amended*, added by Act of December 17, 1968, P.L. 1221, 71 P.S. § 307-3(a).

[3] We note that Section 919(a) limits the subpoena power of the Attorney General to those "commercial and trade practices which the *Bureau of Consumer Protection* (Bureau) has authority to investigate[.]" 71 P.S. § 307-3(a) (emphasis added).

2

2016 to the present," as well as all communications from July 3, 2016, to the present made between Patel and approximately 30 named individuals.[4] Petition, Ex. D at 6.

6. Patel communicated her refusal to comply with the subpoena on the basis it was overly broad and the Attorney General intended to share any documentary materials received pursuant to the subpoena with the Connecticut Attorney General's Office, one entity involved in the multi-state litigation pending in U.S. District Court. Petition, Ex. C at 3.

Following Patel's refusal to comply, the OAG filed its Petition requesting this Court compel Patel to produce all records and documents specified in the subpoena.

## II. Issues

In its principal brief filed in support of the Petition, the OAG raises the following issues:

1. Whether documentary material subpoenaed by the Attorney General pursuant to its powers under the Administrative Code may be used to enforce the CPL?

2. Whether documentary material subpoenaed by the Attorney General may be shared with another jurisdiction's office of attorney general?

---

[4] The subpoena presented here is the second issued by the Attorney General. The first was withdrawn following objections by Patel that it was overly broad and the Attorney General improperly intended to share subpoenaed materials with the Connecticut Attorney General's Office. Petition, Ex. C at 3. The sole difference between the first and second subpoenas is the second document specifically identifies the individuals whose communications with Patel are subject to disclosure.

## III. Analysis

## A. Use of Subpoenas in Enforcing the CPL

First, we address whether material subpoenaed by the Attorney General under the relevant provisions of the Administrative Code may be used to enforce the CPL. The scope of judicial inquiry in a subpoena enforcement action is whether 1) the inquiry is within the authority of the agency, 2) the demand is sufficiently definite, and 3) the information sought is reasonably relevant. *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). Pertinent to our discussion here is whether the inquiry is within the authority of the agency.

Disposition of this issue requires an examination of the relevant powers and duties of both the Attorney General and the Bureau of Consumer Protection (Bureau), as set forth in the Administrative Code and the CPL, as well as an assessment of the continued validity of our decision in *Commonwealth by Packel v. Shults*, 362 A.2d 1129 (Pa. Cmwlth. 1976), in which this Court determined that the subpoena powers granted to the Attorney General under the Administrative Code could not be used to investigate violations of the CPL.

## 1. Subpoena Powers of the Attorney General

The subpoena power at issue is derived from Section 919(a) of the Administrative Code, which authorizes the Attorney General to compel the production of documents and files related to commercial and trade practices "*which the [Bureau] has authority to investigate*[.]" 71 P.S. § 307-3(a) (emphasis added). Section 919(b) relevantly provides that the Attorney General "or any attorney designated by him may use such documentary material or copies thereof as he determines necessary in the enforcement of *this act*." 71 P.S. § 307-3(b) (emphasis added).

4

## 2. Investigative Powers of the Bureau

The powers and duties of the Bureau are outlined in Section 918(1) of the Administrative Code, which authorizes the investigation of "commercial and trade practices in the distribution, financing, and furnishing of goods and services to or for the use of consumers in order to determine if such practices are detrimental to the public interest . . . ." 71 P.S. § 307-2(1). The Bureau is further tasked with conducting "studies, investigations and research in matters affecting consumer interest," advising the executive and legislative branches on matters affecting consumer interest, developing executive policies, drafting legislative programs to protect consumers, investigating "fraud, misrepresentation and deception in the sale, servicing and financing of consumer goods and products[,]" promoting consumer education, and publicizing matters related to consumer fraud, deception, and misrepresentation. 71 P.S. § 307-2(1)-(2). Relevantly*, the Bureau has no power or authority under the Administrative Code to enforce the provisions of the CPL.*

## 3. The CPL

Generally, the CPL prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. 73 P.S. § 201-3. Section 3.1 of the CPL provides that the Attorney General may adopt rules and regulations to enforce and administer the CPL.[5] Section 4 of the CPL grants the Attorney General, or any district attorney, the authority to bring civil actions for injunctive relief to restrain alleged trade practices that violate the CPL. 73 P.S. § 201-4. *The provisions of the CPL neither mention the Bureau nor grant the Bureau enforcement powers*.

---

[5] 73 P.S. § 201-3.1, added by Act of November 24, 1976, P.L. 1166.

## 4. Commonwealth Attorneys Act (Attorneys Act)[6]

Section 201(a) of the Attorneys Act establishes the OAG as an independent department under the direction of the Attorney General. 71 P.S. § 732-201(a). Section 201(c) of the Attorneys Act directs the Attorney General to appoint the Bureau's director, who may exercise "such powers and perform such duties as may be prescribed by the [AG]." 71 P.S. § 732-201(c). Section 204(d) of the Attorneys Act provides that the Attorney General is to administer the provisions relating to consumer protection set forth in Sections 917 through 922 of the Administrative Code (relating to the Bureau),[7] and appoint the advisory committees established in Section 922. 71 P.S. § 732-204(d).

## 5. Continued Viability of *Shults*

The pertinent question in *Shults* was whether an investigative subpoena issued by the Bureau pursuant to Section 919(a) of the Administrative Code lay "within the authority of the agency" that issued it, thus satisfying the first prong of the test in *Morton Salt. Shults*, 362 A.2d at 1131. The Bureau issued a subpoena to Shults, requesting he appear at a hearing and present documents related to his business, which had been under investigation by the Bureau for several months. The purpose of the subpoena was to initiate an action against Shults under the CPL. After Shults

---

[6] Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. §§ 732-101 – 732-506.

[7] As to those provisions not implicated by this matter, Section 917 of the Administrative Code establishes the Bureau under the direction of a director appointed by the Attorney General. 71 P.S. § 307-1. Section 920 provides that the Attorney General shall appoint the personnel required to conduct the work of the Bureau. 71 P.S. § 307-4. Section 921 provides that the Bureau shall not duplicate or interfere with the work of the Pennsylvania Public Utility Commission or substitute for any other Commonwealth agency with the power to protect consumer interests in a particular field. 71 P.S. § 307-5. These other agencies are to cooperate, however, with the Bureau in carrying out its functions. *Id.* Section 922 grants the Governor authority to create advisory committees to assist the Bureau. 71 P.S. § 307-5.

failed to appear, the Commonwealth sought and obtained an order to compel his compliance with the subpoena. Contempt proceedings were initiated in the lower court after Shults once more refused to provide the subpoenaed materials. The lower court's finding of contempt was appealed to this Court.

On appeal, Shults argued that the subpoena issued by the Bureau for purposes of initiating an injunctive action under the CPL was not authorized by Section 919 of the Administrative Code. Actions under the CPL were instead governed by the pre-trial discovery process outlined in the Pennsylvania Rules of Civil Procedure (Rules). By using its investigatory powers under the Administrative Code, the Bureau sought to circumvent the discovery limitations in the Rules.

In defense of its investigative subpoena, the Commonwealth asserted that the purpose of Section 918(1) of the Administrative Code,[8] which authorizes the Bureau to investigate commercial and trade practices to determine whether such practices are detrimental to the public interest, is to facilitate litigation under the CPL. The Commonwealth further argued that Section 919(b) of the Administrative Code, which permits the Attorney General to use subpoenaed material "as he determines necessary in the enforcement of this act[,]" 71 P.S. § 307-3(b), contemplates the use of such materials in litigation brought under the CPL.

While this Court affirmed the lower court's determination that the subpoena was valid, and Shults was in contempt of that order, this Court agreed with Shults that the Bureau was not authorized under the Administrative Code to bring injunctive actions under the CPL. While Section 918 of the Administrative Code grants the Bureau the power to investigate, conduct studies and research, advise the executive and legislative branch, assist in developing executive policies and propose

---

[8] 71 P.S. § 307-2(1).

legislation, as well as promote consumer education, it does not grant the Bureau the power to enforce, restrain, or bring civil actions, and it makes no reference whatsoever to the CPL. Thus, enforcement of the CPL was not among the Bureau's functions as enumerated in the Administrative Code.

This Court further noted that the Attorney General's authority to use subpoenaed materials was limited to "this act," which clearly referenced the Administrative Code and the establishment and functions of the Bureau. It most certainly did not refer to the CPL and, therefore, any documentary material obtained by subpoena under Section 919(a) of the Administrative Code could not be used in any subsequent injunctive action brought under the CPL.

Presently, the OAG argues that, while *Shults* was decided correctly at the time, its holding has been abrogated by passage of the Attorneys Act. More specifically, Section 204(d) of the Attorneys Act tasks the Attorney General with administering Sections 917 through 922 of the Administrative Code. The OAG notes that these provisions relate to consumer protection and the enforcement of laws relating to trade and commerce. As the CPL likewise relates to consumer protection, the OAG contends that Sections 917 through 922 of the Administrative Code and the CPL "should be construed together as one statute." AG Br. at 23. Consequently, the OAG reasons that the subpoena power granted the Attorney General under section 919(a) of the Administrative Code encompasses the enforcement provisions of the CPL.

Furthermore, as Section 919(b) of the Administrative Code provides that the Attorney General, or any attorney designated by him, may use documentary material "as he determines necessary in the enforcement of this act, including presentation before any court[,]" 71 P.S. § 307-3(b), the OAG maintains it may use the

8

investigative file developed under the Administrative Code to enforce compliance with the CPL.

Patel does not dispute the Attorney General's authority to issue an investigative subpoena under the relevant provisions of the Administrative Code. However, Patel suggests the OAG conflates the Attorney General's duties relative to the Bureau under the Administrative Code with his powers under the CPL to initiate adversarial litigation. Documents obtained by the Attorney General through his subpoena powers under the Administrative Code may only be used in furtherance of his duties under the Administrative Code. Patel rejects the argument that *Shults* was superseded by Section 204(d) of the Attorneys Act, as that statute merely directs the Attorney General to "administer the provisions relating to consumer protection" under Sections 917 through 922 of the Administrative Code. 71 P.S. § 732-204(d). Section 204(d) of the Attorneys Act does not grant the Attorney General power to enforce the CPL by means of an investigatory subpoena issued pursuant to the Administrative Code.

As to this first issue, we agree with Patel, as the legislation which informed our opinion in *Shults* remains fundamentally unchanged. The Attorney General's subpoena power under Section 919(a) of the Administrative Code is limited to commercial and trade practices "which the *Bureau* has authority to investigate." 71 P.S. § 307-3(a) (emphasis added). While the Bureau enjoys several powers and duties under Section 918(1) of the Administrative Code, enforcement of the CPL is not among them.

Moreover, the provisions of the Attorneys Act cited by the OAG in no way further its arguments. Section 204, enacted some five years after *Shults*, directs the

Attorney General to administer the Bureau's duties under the Administrative Code. It does not expand the Bureau's duties to encompass enforcement of the CPL.

As our Supreme Court has stated, "the General Assembly is quite able to address what it believes is a judicial misinterpretation of a statute," *Commonwealth v. Batts*, 163 A.3d 410, 460 (Pa. 2017), and its failure to do so in the years following the *Shults* decision gives rise to the presumption that the General Assembly is in agreement with our interpretation. If the General Assembly wished to integrate the Attorney General's investigative subpoena powers under the Administrative Code with its enforcement powers under the CPL, it could have explicitly done so. The General Assembly has not acted, however, and the CPL has never been amended to address the issue identified in *Shults*.[9]

In the absence of an express legislative grant of subpoena powers for actions brought under the CPL, none exists. *See Com. ex rel. Margiotti v. Orsini*, 81 A.2d 891, 893-94 (Pa. 1951) (the only power of subpoena the Attorney General possesses is that given by an act of the legislature – subpoena power, and the extent thereof, is to be determined in each case by the express statutory grant); *City of Erie v. Cappabianca*, 879 A.2d 823, 825 (Pa. Cmwlth. 2005) (in the absence of a statute granting subpoena power to non-judicial bodies or officials, the power to issue subpoenas is limited to the judiciary). Accordingly, we reaffirm our decision in *Shults* and its central holding that the Attorney General lacks the authority to issue an investigative subpoena under the Administrative Code for purposes of enforcing

---

[9] In point of fact, the General Assembly amended the CPL just three months after this Court rendered its decision in *Shults*. At that time, the General Assembly deleted the civil investigative demand as a method for obtaining information from potential violators of the CPL. Nothing prevented the General Assembly from simultaneously expanding the Bureau's powers to include enforcement of the CPL. Its failure to do so raises a presumption that our decision in *Shults* was in accordance with legislative intent. *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 985 A.2d 678, 693 (Pa. 2009).

10

the CPL. Because the Attorney General's intended use of the documentary material sought through his investigative subpoena exceeds his authority under the Administrative Code, we conclude the OAG has not met the first prong of the test in *Morton Salt*, as the inquiry is not within the authority of the agency.

### B. Limitation on Use of Subpoenaed Information

Next, we address the OAG's argument that the Attorney General's contemplated disclosure of subpoenaed material to the Connecticut Attorney General is authorized by Section 919(b) of the Administrative Code.

Section 919(b) provides as follows:

> *No documentary material produced pursuant to a demand under this section shall, unless otherwise ordered by a court for good cause shown, be produced for inspection or copying by, nor shall the contents thereof be disclosed to any person other than the authorized employe of the Attorney General without the consent of the person who produced such material:* Provided, That under such reasonable terms and conditions as the Attorney General shall prescribe, such documentary material shall be available for inspection and copying by the person who produced such material or any duly authorized representative of such person. *The Attorney General or any attorney designated by him may use such documentary material or copies thereof as he determines necessary in the enforcement of this act*, including presentation before any court . . . .

71 P.S. § 307-3(b) (emphasis added).

The OAG argues that the sentence which prohibits disclosure of "documentary material" is subservient to the next sentence, which allows the Attorney General "or any attorney designated by him" to use the material as the AG deems necessary to enforce the act. The OAG provides no relevant legal authority

11

to support its contention that the investigative powers and duties set forth in the Administrative Code extend beyond the territorial limits of the Commonwealth.

We find the OAG's argument in this regard lacking in merit, as the "act" contemplated is clearly the Administrative Code, and *only* the Administrative Code, in the absence of any language to the contrary. The OAG's related argument that the Attorney General may share documentary evidence with Connecticut's Attorney General as an "attorney designated by him" is likewise without merit, as it cannot be credibly maintained that Connecticut's Attorney General seeks to enforce the Administrative Code.

## IV. Conclusion

As the OAG has not met the first requirement of the test in *Morton Salt*, that the "inquiry be within the authority of the agency," we are constrained to deny the OAG's Petition.

_____
ELLEN CEISLER, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,    :
Office of Attorney General,      :
           Petitioner    :
                              :
     v.                 :  No. 116 M.D. 2019
                              :
Nisha Patel,               :
           Respondent  :

# **O R D E R**

AND NOW, this 29th day of October, 2019, the Petition to Compel Compliance with Subpoena filed by the Commonwealth of Pennsylvania Office of Attorney General is DENIED.

_____
ELLEN CEISLER, Judge